No. 59,184

JANICE MOORE, a/k/a JANICE K. MOORE, *Appellee,* v. R. Z. SIMS CHEVROLET-SUBARU, INC., and CHARLES L. KENT, a/k/a CLARK KENT, *Appellants,* and JAMES E. DAVIES and THE CENTRAL STATE BANK OF HUTCHINSON, *Defendants.*

(738 P.2d 852)

Opinion filed June 12, 1987.

*Richard A. Benjes,* of Hutchinson, and the firm of *Michael T. Mills, Chartered,* of McPherson, were on the briefs for R. Z. Sims Chevrolet-Subaru, Inc., and Charles L. Kent, a/k/a Clark Kent, appellants.

*John W. Johnson,* of Render & Kamas, of Wichita, was on the brief for appellee.

The opinion of the court was delivered by

McFARLAND, J.: Janice Moore purchased a 1981 Chevrolet

Silverado pickup truck from defendant R. Z. Sims Chevrolet-Subaru, Inc. (dealership). She brings this action against, *inter alia*, the dealership and two of its employees, Charles L. Kent (a/k/a Clark Kent) and James E. Davies, seeking damages for alleged intrusion upon seclusion (invasion of privacy) in connection with the dealership's attempted repossession of the vehicle. The defendant dealership counterclaimed against plaintiff seeking a judgment for the unpaid balance due on the vehicle and related relief. The dealership's counterclaim was determined in a bench trial with the dealership prevailing therein. Plaintiff appeals from said judgment. Plaintiff's tort action was determined in a jury trial with plaintiff being awarded $12,000. The dealership and one of the employees appeal therefrom.

The issues raised in the appeals are as follows:

I.   Whether, as a matter of law, the action of Charles L. Kent, in entering the kitchen-office area of the Salebarn Cafe to discuss with Janice Moore the repossession of the truck, provides a cause of action for intrusion upon seclusion,

II.  whether Janice Moore's damages were proved with reasonable certainty, and

III. whether the district court erred in holding that the sale of the truck was not a door-to-door sale within the purview of the Kansas Consumer Protection Act.

The facts must be set forth in considerable detail.

On Wednesday, May 25, 1983, Larry Moore entered the used car lot at R. Z. Sims Chevrolet in Hutchinson. Charles L. Kent, a salesman at the dealership, approached Larry, who indicated an interest in purchasing a certain 1981 Chevrolet Silverado pickup truck on the lot. Kent and Larry took a test drive in the truck, returned to the dealership, and filled out the necessary papers. Larry provided credit information on himself and his wife, Janice Moore. Kent informed Larry he saw no problem with financing and allowed Larry to take the truck home. Larry drove the truck to the home of his wife's friend Wilda Reed where Janice was waiting.

Janice Moore was convinced that Larry's loan would not be approved. Larry was to return to the dealership the next day at noon to sign the loan papers. Janice called the dealership to

inform Kent that Larry would be late in returning with the truck, but she was unable to reach Kent and left a message. When Larry arrived at the dealership, Kent informed him that the loan had not been approved, and Larry left in his 1965 Ford F250 pickup truck. During the next two days Janice expressed an interest in the Silverado pickup truck. Kent testified that he returned Janice's call of May 26 later that same day and she expressed an interest in purchasing the truck, providing him with additional credit references at that time. Janice testified that she received calls from Kent and R. Z. Sims' business manager, Jim Davies, on Saturday morning, May 28, 1983, in which she was asked if she was interested in purchasing the truck. An agreement was reached and on Saturday, May 28, 1983, Kent delivered the 1981 Chevrolet Silverado to the Salebarn Cafe in McPherson, which Janice owned and operated. Kent was instructed by Jim Davies to have Janice sign the necessary papers, collect a check for the $1,500 down payment, and obtain possession of, and title to, the Moores' 1965 Ford F250 pickup truck to serve as a trade-in. Janice informed Kent that she had made arrangements to secure the down payment the following Tuesday, May 31, 1983, and that this arrangement had been approved by Davies. Kent left in Moore's traded-in 1965 Ford pickup truck.

Janice was ill the following Tuesday but on the next day, Wednesday, June 1, 1983, made two unsuccessful attempts to secure a loan for the down payment. On June 2, 1983, Janice and Larry took the 1981 Chevrolet to the dealership and Janice indicated that because she could not secure the down payment, the deal was off. Davies erroneously indicated that the Moores' trade-in had already been sold and would not accept the return of the 1981 truck. On June 3, 1983, Jack Bowker, the Moores' attorney, sent a letter to the dealership requesting that the dealer either return the old truck or allow Janice to make the down payment in installments. Bowker also requested that any further dealings between the dealership and Janice Moore be handled through him.

On June 9 or 10, 1983, Kent drove to the Salebarn Cafe and attempted to repossess the 1981 Chevrolet truck. He entered the cafe and asked to see Janice. After waiting for a time, Kent entered the kitchen-office area of the cafe through doors marked

"Employees Only" and talked to Janice. During the course of Kent's discussion with Janice, Larry was called and came to the cafe. Janice was unsuccessful in contacting her attorney. Both Janice and Larry were upset, and Kent left the cafe without taking the 1981 Chevrolet truck.

On June 13, 1983, Janice filed suit in McPherson County District Court, seeking either cancellation of the contract or a finding that the dealership had waived its rights to the $1,500 down payment. The petition also alleged harassment by telephone, defamation, and violations of the Kansas Consumer Protection Act (KCPA). The dealership answered and counterclaimed for payment of $1,500, for execution of the certificate of title to the 1965 Ford F250 trade-in vehicle, and for the balance due on the sales agreement. The counterclaim also sought authorization to repossess and sell the 1981 Chevrolet and apply the net proceeds of the sale against the judgment.

An amended petition filed May 10, 1984, alleged multiple violations of the KCPA. The amended petition also alleged that Kent and Davies engaged in outrageous conduct toward Janice, defamed Janice, and invaded her privacy from May 31, 1983, through June 10, 1983. The proceedings were bifurcated with a bench trial on the alleged KCPA violations and a jury trial on the tort claims.

The bench trial was held February 19-20, 1985, the district court finding that no violation of the KCPA had been established. Judgment was rendered for the dealership on its counterclaim in the amount of $8,442.82. The dealership was authorized to foreclose on the 1981 Chevrolet, sell it, and apply the net proceeds of the sale to the judgment. Janice Moore was also ordered to sign and deliver the certificate of title to the 1965 Ford pickup to the dealership.

Prior to the jury trial on the tort claim, a pretrial order was filed July 29, 1985, in which Janice Moore framed four issues, two based on harassment by telephone and two based on invasion of privacy (intrusion upon seclusion) in the June 9 or 10, 1983, attempted repossession of the truck.

The district court granted the defendants' motion for summary judgment with regard to the harassment by telephone allegations but overruled the motion for summary judgment with regard to

the invasion of privacy allegations arising from Kent's entry into the kitchen-office area of the cafe. The jury trial was held September 10-11, 1985, and the jury found for Janice Moore in the amount of $12,000. This appeal and cross-appeal arise from said trials.

We shall first consider the issues arising from the appeal of the dealership and its employee Kent. These arise from the jury trial on Janice Moore's intrusion upon seclusion claim.

The jury was instructed, in pertinent part, as follows:

"INSTRUCTION NO. 1

"Plaintiff Janice Moore claims that she sustained injuries and damages as a result of the defendant R. Z. Sims Chevrolet-Subaru, Inc., after having received a letter from Mrs. Moore's attorney requesting that they deal through him, proceeded to instruct the defendant Clark Kent to go to her cafe in McPherson, Kansas, and repossess a pickup truck; that the defendant Clark Kent in an effort to comply with instructions entered the cafe and, though instructed by the plaintiff to wait and in violation of an 'Employees Only' sign violated her privacy by proceeding to enter the private area of the cafe in order to confront the plaintiff with demands for the return of the truck and to make threats that she would be required to pay damages and mileage; that as a result of such intrusion she became hysterical, physically sick, disabled and could not work or tend to her business and personal affairs. The plaintiff has the burden to prove that her claims are more probably true than not true.

"The defendants Clark Kent and R. Z. Sims Chevrolet-Subaru, Inc., deny that Clark Kent intentionally intruded into the kitchen and business office area of the Salebarn Cafe but entered that area upon the express or implied consent of Janice Moore for a legitimate purpose of repossessing the Chevrolet Silverado pickup truck.

"The defendants further deny that the kitchen and business office of the Salebarn Cafe was a secluded or isolated place.

"The defendants further deny that the entry by Clark Kent into the kitchen and business office of the Salebarn Cafe was highly offensive to an ordinary person but was a reasonable exercise of the rights of repossession of R. Z. Sims Chevrolet-Subaru, Inc.

"The defendants contend that any emotional upset and distress experienced by the plaintiff was not due to the entry by Clark Kent into the kitchen and business office area of the Salebarn Cafe but was due to other causes."

"INSTRUCTION NO. 2

"The right of privacy is the right to be let alone.

"In order to constitute an invasion of the right of privacy, the act must be of such a nature that would cause mental distress or injury to a person having ordinary feelings and intelligence.

"The rights of privacy is invaded if another intentionally intrudes, physically

upon the solitude or seclusion of another and if the intrusion would be highly offensive to an ordinary man.

"PIK [Civ. 2d] 14.61."

"INSTRUCTION NO. 5

"When one accepts credit he or she impliedly consents for the creditor to take reasonable steps to pursue payment and recovery of secured property. The right of a debtor to privacy is subject to the right of a creditor to take reasonable steps to collect the debt even though the creditor's method may result in some actual, though not actionable, invasion of privacy. In order for an invasion of such right to be actionable, it must be of such manner and nature as to outrage or cause mental suffering, shame or humiliation to a person of ordinary sensibilities."

Thus, the only theory of liability submitted to the jury was intrusion upon seclusion (invasion of privacy) arising from Kent's physical entry into the kitchen-office area of plaintiff's cafe which was marked "Employees Only."

These instructions correctly state the law and the contentions of the parties. The first issue is whether or not, as a matter of law, the action of Kent in entering the kitchen-office area to speak with Janice Moore about repossession of the truck is a sufficient legal basis for an intrusion upon seclusion claim. Put another way, did the district court err in overruling the motion of the dealership and Kent for a directed verdict made at the close of the evidence? We believe that the motion should have been granted.

Restatement (Second) of Torts § 652B (1976) provides:

"One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person."

In *Werner v. Kliewer*, 238 Kan. 289, 710 P.2d 1250 (1985), we quoted Restatement (Second) of Torts § 652B and stated:

"A cause of action based upon § 652B was specifically recognized by this court in *Froelich v. Adair*, 213 Kan. 357, 359, 516 P.2d 993 (1973). However, to prevail upon such a claim it is necessary to establish two factors: First, something in the nature of an intentional interference in the solitude or seclusion of a person's physical being, or prying into his private affairs or concerns, and second, that the intrusion would be highly offensive to a reasonable person. Comment b. to § 652B of the Restatement reads:

'The invasion may be by physical intrusion into a place in which the plaintiff has secluded himself, as when the defendant forces his way into the plaintiff's room in a hotel or insists over the plaintiff's objection in entering his home. It may also be by the use of the defendant's senses, with or without mechanical

aids, to oversee or overhear the plaintiff's private affairs, as by looking into his upstairs windows with binoculars or tapping his telephone wires. It may be by some other form of investigation or examination into his private concerns, as by opening his private and personal mail, searching his safe or his wallet, examining his private bank account, or compelling him by a forged court order to permit an inspection of his personal documents. The intrusion itself makes the defendant subject to liability, even though there is no publication or other use of any kind of the photograph or information outlined.' " 238 Kan. at 294.

In *Werner*, the plaintiff sued her physician for invasion of privacy due to his disclosure of medical information without her consent. The physician sent a letter to the district court during divorce and child custody proceedings involving plaintiff and her husband. The letter was written at the request of plaintiff's husband and detailed plaintiff's treatment and behavior while a patient. This court upheld a grant of summary judgment in favor of the physician, holding that there had been no cause of action established based on intrusion upon seclusion. 238 Kan. at 295.

In *Froelich v. Werbin*, 219 Kan. 461, 548 P.2d 482 (1976), defendant was accused of invading plaintiff's privacy by hiring a hospital orderly to enter plaintiff's hospital room and obtain a sample of his hair. The plaintiff was unaware that the hair sample had been taken until later but claimed to have suffered mental distress as a result of the intrusion upon his seclusion. In upholding the entry of a directed verdict in favor of the defendant, we stated:

"In comment (d) of § 652B of the Restatement it is stated that there is no liability for intrusion upon seclusion unless interference with the plaintiff's seclusion is a substantial one, of a kind that would be highly offensive to the ordinary reasonable man, as the result of conduct to which the reasonable man would strongly object. In our judgment the trial court was correct in holding that the plaintiff's evidence failed to establish a wrongful intrusion of such a nature as to outrage or cause mental suffering, shame or humiliation to a person of ordinary sensibilities. Here the undisputed evidence showed that the plaintiff's hair was obtained by the hospital orderly in an unobtrusive manner. In our judgment the evidence was insufficient as a matter of law to establish a cause of action for intrusion upon seclusion." 219 Kan. at 465.

A further factor in this case is that plaintiff and defendant were involved in a debtor-creditor relationship, and the objected-to conduct arises directly from that relationship. In *Dawson v. Associates Financial Services Co.*, 215 Kan. 814, 529 P.2d 104 (1974), this court recognized a cause of action for harassment of a

debtor by a creditor, stating the following pertinent rules with regard to the debtor-creditor relationship:

"The issue has not been squarely presented in a debtor-creditor situation. In this situation it must be recognized the right to be left alone is qualified by the rights of others. When one accepts credit, the debtor impliedly consents for the creditor to take reasonable steps to pursue payment even though it may result in actual, though not actionable, invasion of privacy. [Citation omitted.] In the debtor-creditor situation the right of debtor to privacy is subject to the right of a creditor to take reasonable steps to collect the debt. [Citation omitted.]

"In this area of the developing law, the business community must be given some latitude to pursue reasonable methods of collecting debts even though such methods often might result in some inconvenience or embarrassment to the debtor. [Citation omitted.] Debtors cannot object to some inconvenience in connection with their creditor's efforts to collect a debt. It has been held that debtors' tender sensibilities are protected only from oppressive, outrageous conduct. [Citations omitted.]" 215 Kan. at 820-21.

Here, Janice had secured possession of the dealership's Silverado truck and had paid no money therefor. The truck she had traded in was in the possession of the dealership but the title thereto had not been signed, hence, the dealership could not sell the trade-in. The salesman went to the purchaser's place of business (a cafe owned and operated by her) to resolve what were significant problems in the transaction. The salesman was told to wait for Janice at a table in the cafe. When Janice did not appear, the salesman entered the kitchen-office area to talk with her. Considering the debtor-creditor relationship of the parties with its rather unique problems and the facts of the alleged intrusion, we conclude the district court should have sustained the motion for a directed verdict. It is difficult to perceive the kitchen of a cafe as being an area of seclusion or solitude. Kent's entrance therein, under the circumstances herein, is not a substantial intrusion upon whatever seclusion therein existed to which a reasonable person would strongly object or find highly offensive. The judgment entered in favor of plaintiff Moore against defendant dealership and Kent must be reversed.

By virtue of our determination of the first issue, we do not reach the second issue concerning the propriety of the damages awarded plaintiff Moore.

This brings us to the sole issue raised by Janice Moore in her cross-appeal from the judgment entered against her following

the bench trial on the dealership's counterclaim. Moore contends that the district court erred in holding that the sale of the Silverado pickup truck was not a door-to-door sale within the purview of the Kansas Consumer Protection Act, K.S.A. 50-623 *et seq.*

K.S.A. 50-640(a) provides, in part:

"[A] consumer has the right to cancel a door-to-door sale made within this state until midnight of the third business day after the day on which the consumer signs an agreement or offer to purchase . . . ."

K.S.A. 50-640 requires that a door-to-door sales agreement give notice to the buyer of his or her right to cancel. Moore contends the Silverado sale was a door-to-door sale, that she had a right to cancel within three days after the transaction, and the dealership violated the act by not notifying her of her right to cancel. The dealership countered that this was neither a door-to-door sale nor a consumer transaction. The district court, following the bench trial, made extensive findings of fact and conclusions of law. It is worthwhile to include herein the pertinent portions thereof.

### "FINDINGS OF FACT

"On May 25, 1983, the plaintiff's husband, Frank Larry Moore, went to the used car lot of the defendant, R. Z. Sims Chevrolet-Subaru, Inc., in Hutchinson, Kansas. He was met by a salesman, Clark Kent, and together they test-drove a 1981 Chevrolet pickup which Mr. Moore had expressed an interest in and which is the subject matter of this lawsuit.

"After test-driving the vehicle in question, Mr. Moore indicated he wanted to buy it for his wife, Janice Moore, d/b/a Salebarn Cafe. Terms of the sale were discussed between Moore and Kent, and Moore gave Kent credit information about himself and his wife to be used on a credit application. Kent was led to believe that Moore represented himself and his wife in this transaction. Kent advised Moore that everything appeared to be okay and told him he could take the pickup home if he returned by noon the next day (May 26, 1983) to sign the paperwork. License tags were taken off Moore's 1965 pickup and put on the 1981 pickup and he then left the used car lot and returned home.

"Upon arriving in McPherson, Larry Moore picked up his wife and Wilda Reed and went for a drive. He advised the plaintiff that he was purchasing the pickup and needed to return to Hutchinson the next day by noon to sign the paperwork. The plaintiff was aware that the 1965 Ford pickup, which was really her pickup (actually titled in Larry Moore and Janice Moore's names but bought with Janice Moore's money), was to be used as a trade-in for the 1981 Chevy pickup. She liked the 1981 pickup and at no time protested about the proposed purchase or the use of her 1965 Ford pickup as a trade-in, although she did

indicate to Wilda Reed that she doubted that a loan would be made to her husband based on his past credit.

"On May 26, 198[3], Mr. Moore returned to R. Z. Sims Chevrolet-Subaru, Inc., in Hutchinson. However, he got a late start and didn't arrive until after one o'clock p.m. In the meantime, the plaintiff had called R. Z. Sims Chevrolet-Subaru, Inc., to inform Clark Kent that her husband had gotten a late start and wouldn't be arriving until after twelve o'clock noon. However, she was not able to talk to Clark Kent since he was unavailable. When Mr. Moore arrived he was advised by Jim Davies that his credit information had been checked out and he did not qualify for a loan. At that point Mr. Moore switched tags on the pickup and left R. Z. Sims Chevrolet-Subaru, Inc., in a state of depression. He did not return home until the next day and instead stayed in a motel for the night and drank his depression away.

"After Mr. Moore left the premises on May 26, 1983, Clark Kent tried to return the plaintiff's call on three occasions. Each time he was unable to talk to her for one reason or another. Finally, at approximately 2:30 p.m., Kent was able to contact the plaintiff. The plaintiff explained why she had called for Kent earlier in the day and then asked if the loan had been approved. Kent advised her that it had not. The plaintiff then asked why since her credit was good. The plaintiff and Kent had a further brief conversation during which time he took additional credit information from her and the conversation ended with Kent telling her he would see what he could do further. Thereafter Kent gave this additional credit information to Davies.

"Sometime on May 26 or 27, 1983, Davies again processed the credit application of the Moores, except this time Janice Moore and her credit were more fully scrutinized. The loan was approved. Davies called Janice Moore on May 27, 1983, at approximately 12:30 p.m. and informed her of the approval. The terms of the sale were discussed, including purchase price, trade-in allowance for the 1965 Ford pickup and down payment of fifteen hundred dollars. She informed Davies she wanted to take title to the pickup as Janice Moore d/b/a Salebarn Cafe and asked that they deliver the truck to her in McPherson since she could not get away from work. Davies agreed.

"On May 28, 1983, Davies instructed Kent to deliver the 1981 pickup to the plaintiff, get the plaintiff to sign all the paperwork and return with the trade-in Ford pickup and the down payment. Kent arrived in McPherson somewhere around nine o'clock a.m. The plaintiff signed all the paperwork and Kent returned to Hutchinson without the down payment or a signed title to the 1965 Ford pickup. Upon arriving at R. Z. Sims Chevrolet-Subaru, Inc., Kent told Davies that he did not get the down payment because the plaintiff had told him that she did not have it and that she had made other arrangements for its payment with Davies. Additionally, Kent stated the title to the Ford pickup was unsigned because he was not sure of where to have the plaintiff sign on it. Davies, upset at not having the down payment, called the plaintiff on two occasions on the 28th. The plaintiff told Davies she could not get the down payment until she was able to get to the bank, which would be the next Tuesday. After talking to Davies, the plaintiff contacted Wilda Reed and Debbie Mick to see if they would cosign with the plaintiff so that she could borrow the fifteen hundred dollars down payment. Ultimately she tried two banks but was turned down.

"On June 2, 1983, Janice Moore and Larry Moore went to R. Z. Sims Chevrolet-Subaru, Inc., in Hutchinson. The plaintiff tried to void the sale because she was unable to get the down payment. Davies refused, telling her that her trade-in had been sold and the financing contract assigned to the bank. In fact, the plaintiff's trade-in had not been sold even though Davies was under this impression. While there and outside the presence of the plaintiff, Larry Moore arranged to have R. Z. Sims Chevrolet-Subaru, Inc., provide a rim and jack for the 1981 pickup, which Mr. Moore claimed was part of the original deal. No payment was made to R. Z. Sims Chevrolet-Subaru, Inc., for these items and the plaintiff saw the items being put in the pickup just before she drove away. To the date of trial the down payment had not been paid by the plaintiff, nor had the plaintiff paid anything on the financing agreement.

"The only evidence at trial concerning the primary use of the 1981 Chevrolet pickup came from the plaintiff. She testified that she took title to the pickup as Janice Moore d/b/a Salebarn Cafe so that she could write off the cost as a business expense. The insurance on the truck was charged to the business and the business paid for gas on numerous occasions. She stated in her testimony the pickup was to be used for business purposes, such as going to the bank and picking up supplies. She further testified that she also used the pickup for personal use, including driving to and from home, and on numerous occasions gas was paid for by her personally or by a member of her family. The only other evidence on this point was a statement on the purchase order (Defendant's Exhibit C) that the truck was to be principally used for personal reasons. However, it is clear that this form was filled out by R. Z. Sims Chevrolet-Subaru, Inc., in Hutchinson and that the plaintiff did not read this document before she signed it.

"Based upon the above facts, I have arrived at the following conclusions:

## "CONCLUSIONS

. . . .

"2. Under the facts of this case, the sale of the 1981 Chevrolet pickup to the plaintiff did not constitute a door-to-door sale by the defendant as defined under the Kansas Consumer Protection Act for two reasons:

"A. Under K.S.A. 50-640 a door-to-door sale involves the sale of consumer property. Consumer property is defined under K.S.A. 50-640 as being property purchased primarily for personal, family or household purpose. The burden of proving that a door-to-door sale exists and, therefore, consumer property is involved falls on the plaintiff. From the evidence presented I am unable to say by a preponderance of the evidence that the 1981 Chevy pickup was purchased by the plaintiff primarily for personal, family or household purpose as opposed to business purpose.

"B. Under K.S.A. 50-640 a door-to-door sale does not include a transaction:

" 'made pursuant to prior negotiations in the course of a visit by the buyer to a retail business establishment having a fixed, permanent location where the property is exhibited or the services are offered for sale on a continuing basis.'

"The evidence in this case clearly shows that on May 25 and 26, 1983, the

plaintiff's husband, Larry Moore, contacted R. Z. Sims Chevrolet-Subaru, Inc., at its place of business in Hutchinson, Kansas, with the intent of purchasing a pickup. R. Z. Sims Chevrolet-Subaru, Inc., was led to believe by Mr. Moore that the plaintiff was also involved in the purchase. The evidence further shows that on May 25, 1983, the plaintiff became aware of the transaction and neither protested the purchase [nor] objected to the trade-in of the 1965 Ford pickup in which she had an interest. Furthermore, she initiated the contact with Clark Kent on May 26 and protested when advised that the credit application filed by her husband on both their behalfs had been rejected. At no time did she indicate to R. Z. Sims Chevrolet-Subaru, Inc., that she was acting independently of her husband or objected to her husband's attempt to purchase the pickup for her. The only logical conclusion the Court can come to based on the plaintiff's actions in this case is that the plaintiff is estopped to deny that her husband was acting as her agent in his dealings with R. Z. Sims Chevrolet-Subaru, Inc.; and, as a result, the initial contract by Larry Moore and R. Z. Sims Chevrolet-Subaru, Inc., and the ultimate sale of the pickup to the plaintiff are all part of one transaction."

Where the trial court has made findings of fact and conclusions of law, the function of this court on appeal is to determine whether the findings are supported by substantial competent evidence and whether the findings are sufficient to support the trial court's conclusions of law. *Friedman v. Alliance Ins. Co.*, 240 Kan. 229, Syl. ¶ 4, 729 P.2d 1160 (1986). We have reviewed the record and find the trial court's findings of fact are supported by substantial competent evidence. Moore does not seriously challenge the trial court's findings of fact, but contends they are insufficient to support its conclusions. We do not agree.

Kansas Comment 1973 to K.S.A. 50-640 makes it clear that the main target of the statute is the home solicitation sale. In such circumstances, a person may be quietly watching his or her television set, answer the unexpected doorbell, and within thirty minutes have signed up for ten years of dancing lessons. The statute gives the gullible consumer an opportunity to consider and reflect upon such a purchase and cancel the same if desired. Janice Moore's purchase of the truck simply does not fall into the category of a door-to-door sale. The trial court's rationale and conclusions in regard thereto are reasonable and cannot be held to be erroneous. Although a somewhat closer point, we cannot say the trial court's conclusion that this was not a consumer sale is not supported by its findings. We conclude this issue is without merit.

The judgment against defendant R. Z. Sims Chevrolet-Subaru,

Inc., and Charles L. (Clark) Kent arising from the jury trial is reversed; the judgment in favor of counterclaimant R. Z. Sims Chevrolet-Subaru, Inc., arising from the bench trial is affirmed.

HOLMES and HERD, JJ., not participating.