(856 P.2d 183)

No. 68,914

KENNETH and JUANITA FINLAY, *Appellants*, v. ROBERT FINLAY, *Appellee*.

Opinion filed June 25, 1993.

*Keith Renner, Lee R. Barnett,* and *Lori L. Yockers,* of Law Office of Lee R. Barnett, of Wakarusa, for appellants.

*Marian M. Burns* and *Patrick G. Walsh,* of Burns, Burns, Walsh & Walsh, P.A., of Lyndon, for appellee.

Before BRISCOE, C.J., LARSON, J., and DAVID J. KING, District Judge, assigned.

KING, J.: Kenneth and Juanita Finlay (plaintiffs) appeal from an order granting Robert Finlay (defendant) summary judgment on all of their claims and dismissing their cause of action.

The parties are relatives and neighbors. Robert is the nephew of Kenneth and Juanita. A county road separates the properties of the parties by approximately 50 feet. The properties are in rural Osage County.

The farmstead on which Kenneth and Juanita reside was originally occupied by Kenneth's grandfather. They have lived in their present house since 1948 or 1949.

Robert purchased 120 acres directly east of his aunt and uncle's farmstead in 1981. He purchased the property from Harold Widau.

For simplicity and clarity, we will refer to the parties as plaintiffs and defendant. Plaintiffs' claims against the defendant relate to defendant's use of his property, which they contend constitutes a nuisance and an invasion of plaintiffs' privacy. Plaintiffs also assert a claim for trespass.

When defendant purchased his property, it had a holding pen and shed located directly across the road from plaintiffs' house. The previous owner had raised cattle and used the pen for feeding and working his cattle. The cattle were otherwise allowed to roam over a larger pasture area. After defendant acquired the property, he made improvements to the 1.8-acre pen and uses it to feed approximately 50 head of cattle. He keeps his cattle in the pen from November through May.

Plaintiffs contend the smell created by defendant's cattle feeding operation constitutes a nuisance and invasion of their privacy.

They seek injunctive relief for the nuisance and damages for the invasion of their privacy. In addition, plaintiffs contend that defendant allowed cattle to stray upon their property and request injunctive relief and damages for this trespass.

The trial court granted the defendant summary judgment on all of the plaintiffs' claims, finding: (1) that plaintiffs' claims for nuisance were barred by K.S.A. 2-3201 *et seq.*; (2) that plaintiffs' claim for invasion of privacy did not state a cause of action; and (3) that defendant was entitled to summary judgment on plaintiffs' trespass claim because plaintiffs failed to establish they sustained damages as a result of defendant's livestock straying onto their property.

### STANDARD OF REVIEW

"Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. When summary judgment is challenged on appeal, an appellate court must read the record in the light most favorable to the party who defended against the motion for summary judgment." *Falls v. Scott,* 249 Kan. 54, Syl. ¶ 1, 815 P.2d 1104 (1991).

The appellate court has unlimited review of the district court's conclusions of law. *Hutchinson Nat'l Bank & Tr. Co. v. Brown,* 12 Kan. App. 2d 673, 674, 753 P.2d 1299, *rev. denied* 243 Kan. 778 (1988).

### COMPLIANCE WITH SUPREME COURT RULE 141

Plaintiffs contend the trial court erred by hearing defendant's motion for summary judgment without allowing them the full 21-day response period allowed by Rule 141 (1992 Kan. Ct. R. Annot. 124).

The record shows defendant's motion for summary judgment was filed with the trial court on August 11, 1992. The certificate of service shows it was mailed the same day. The hearing on the motion for summary judgment was held on September 1, 1992. Plaintiffs filed their response the same day the motion was heard.

Pursuant to Rule 141, as interpreted by *Munkers v. Pomerenke,* 11 Kan. App. 2d 569, 573, 730 P.2d 360 (1986), a district court does not have the power to hear a motion for summary judgment until the full 21-day period found in the rule has passed. "How-

ever, the district court does have the power to rule on the motion provided the party opposing it has responded or has agreed to a disposition before the expiration of the twenty-one-day period." 11 Kan. App. 2d at 573.

The record shows that plaintiffs filed their response to the motion for summary judgment on the day it was heard and stated in court they were prepared to proceed. The trial court did not err· in hearing the motion for summary judgment.

Plaintiffs also contend the trial court erred in granting summary judgment because defendant's memorandum in support of his motion was not in compliance with Rule 141. Plaintiffs contend that defendant's contentions of uncontroverted fact contained more than one fact in each separately numbered paragraph. Each factual contention within a paragraph did contain references to the record in the case. The trial court concluded the form of defendant's motion sufficiently complied with Rule 141. We agree.

The plaintiffs further contend that since some paragraphs of contentions of uncontroverted fact were completely controverted by the plaintiffs, and others controverted in part, defendant's motion did not contain "uncontroverted facts" and, therefore, did not comply with Rule 141. Plaintiffs apparently misunderstand the requirement of Rule 141. It provides that the moving party must set out "uncontroverted *contentions* of fact." (Emphasis added.) The fact a party, in response to the motion, controverts some of the *contentions* does not necessarily mean Rule 141 has not been complied with.

## NUISANCE CLAIM

Plaintiffs request injunctive relief for defendant's maintenance of an ongoing nuisance. The trial court found K.S.A. 2-3201 *et seq.* precluded plaintiffs' claim as a matter of law.

The legislature enacted K.S.A. 2-3201 *et seq.* in 1982. It recognized that people and activities not previously associated with agriculture were moving into traditionally agricultural areas. This raised the possibility that there would be numerous nuisance lawsuits filed to stop or limit the use of the land. In an effort to keep the agriculture industry from being crowded out by sub-

urban or industrial expansion, the legislature enacted Article 32, titled "Protection of Farmland and Agricultural Activities."

K.S.A. 2-3201 states:

"It is the declared policy of this state to conserve and protect and encourage the development and improvement of farmland for the production of food and other agricultural products. The legislature finds that agricultural activities conducted on farmland in areas in which nonagricultural uses have moved into agricultural areas are often subjected to nuisance lawsuits, and that such suits encourage and even force the premature removal of the lands from agricultural uses. It is therefore the purpose of this act to provide agricultural activities conducted on farmland protection from nuisance lawsuits."

Although not prohibiting nuisance actions, K.S.A. 2-3202 establishes that agricultural activities are presumed not to be a nuisance if conducted in a manner consistent with good agricultural practice and established prior to surrounding nonagricultural activities, unless the activity has a substantial adverse affect on public health and safety. If the agricultural activity is conducted in conformity with federal, state, and local regulations, it is presumed to be a good agricultural practice and presumed not to adversely affect public health and safety.

The language of K.S.A. 2-3202 indicates that a defendant must satisfy three conditions to be protected by the statute: (1) The operator must be conducting agricultural activities on farmland; (2) the operation must conform with all federal, state, and local laws; and (3) the operation must have been established prior to the inception of the conflicting nonagricultural activities. Note, *Agricultural Law: Suburban Sprawl and the Right to Farm*, 22 Washburn L.J. 448, 466 (1983).

Kansas appellate courts have not previously had occasion to review K.S.A. 2-3201 *et seq.* At least 47 other states have enacted some kind of "Right to Farm" law. Hand, *Right-to-Farm Laws: Breaking New Ground in the Preservation of Farmland*, 45 U. Pitt. L. Rev. 289 (1984).

The Nebraska Supreme Court, interpreting a similar "Right to Farm" statute, held that the statute was inapplicable to a situation where a change in use had occurred on the land used for agricultural purposes. *Flansburgh v. Coffey*, 220 Neb. 381, Syl. ¶ 2, 370 N.W.2d 127 (1985). In the *Flansburgh* case, Coffey sold a

portion of his property to Flansburgh in 1968 for residential use. Prior to that time, Coffey had raised hogs on his land. However, between 1968 and 1975 no hogs were raised on the property. Although a few hogs were raised subsequent to 1975, the problem began in 1981 when Coffey's tenant built a hog confinement building for his hog raising and feeding operation. The building was approximately 72 feet from Flansburgh's property and housed approximately 300 hogs. 220 Neb. at 383-84.

The Nebraska court ruled that the installation of the confinement building constituted a change in the use of agricultural property, and that the use of the adjacent residential property had not changed. Under such circumstances, the statute was unavailable as a defense against Flansburgh's nuisance suit. 220 Neb. at 385. The Kansas requirement that the agricultural activity predate the nonagricultural activity bears analogy to Nebraska's "change in use" rule.

The facts in this case show that defendant, to an extent, changed the use of the property. Although the previous owners had raised cattle on the property, defendant made improvements to the pen and began conducting a feedlot type operation. The previous owner had allowed his cattle access to additional pasture; defendant confined his cattle to the 1.8-acre pen for substantial periods of time. Therefore, as in *Flansburgh*, the record shows that any change in use occurred only on defendant's property and not on the surrounding property, thereby negating the element in K.S.A. 2-3202 that the agricultural activity be established prior to the surrounding nonagricultural activity.

The record shows that in the past, defendant's operations have violated state regulations. Plaintiffs allege that defendant has not fully complied with the Kansas Department of Health and Environment (KDHE) instructions to clean the feeding pen out at least once a year. The record also shows that both defendant's and plaintiffs' lands have always been used for agricultural purposes. Plaintiffs' residence is a farm home, located in an agricultural area, not a nonagricultural use which has moved into an agricultural area.

From these facts, it is apparent that the stated purpose of K.S.A. 2-3201 of protecting agricultural land from the encroachment of nonagricultural activities has no application here. Fur-

ther, the evidence does not establish that defendant's land was used for the feeding and raising of cattle prior to the plaintiffs' property being used as a farm home.

For these reasons, the trial court erred in relying on K.S.A. 2-3201 and K.S.A. 2-3202 in granting defendant's motion for summary judgment.

Since Kansas "Right to Farm" statutes are inapplicable, this case must be resolved using traditional concepts of nuisance as they relate to farmland. This court summarized rules applicable to nuisance claims in the case of *Sandifer Motors, Inc. v. City of Roeland Park*, 6 Kan. App. 2d 308, 628 P.2d 239, *rev. denied* 230 Kan. 819 (1981):

"A nuisance is an annoyance, and any use of property by one which gives offense to or endangers the life or health, violates the laws of decency, unreasonably pollutes the air with foul, noxious odors or smoke, or obstructs the reasonable and comfortable use and enjoyment of the property of another may be said to be a nuisance." Syl. ¶ 1.

"To constitute a nuisance, the interference with plaintiff's use of its property must be both substantial and unreasonable." Syl. ¶ 3.

"What may or may not constitute a nuisance in a particular case depends upon many things, such as the type of neighborhood, the nature of the thing or wrong complained of, its proximity to those alleging injury or damage, its frequency, continuity or duration, and the damage or annoyance resulting. Each case of necessity must depend upon the particular facts and circumstances." Syl. ¶ 4.

The facts here do not demonstrate the defendant was entitled to summary judgment as a matter of law, applying the above-stated traditional rules governing nuisance claims. We therefore conclude it was error for the trial court to grant defendant summary judgment on plaintiffs' nuisance claim.

## INVASION OF PRIVACY

Plaintiffs request damages for invasion of privacy. The facts upon which this claim is based are the same as in their nuisance claim. The trial court, without specifying the reason for its decision, concluded that "plaintiff does not state a cause of action for invasion of privacy."

Generally, invasion of privacy is actionable where there is: (1) unreasonable intrusion upon the seclusion of another; (2) appropriation of another's name or likeness; (3) unreasonable publicity given to another's private life; or (4) publicity that unreasonably

places another in a false light before the public. Restatement (Second) of Torts § 652A (1976).

Plaintiffs premise their claim for invasion of privacy upon the defendant's conduct unreasonably intruding upon their seclusion.

"One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another, or his private affairs or concerns, is subject to liability to the other for invasion of his privacy if the intrusion would be highly offensive to a reasonable person." *Moore v. R.Z. Sims Chevrolet-Subaru, Inc.,* 241 Kan. 542, Syl. ¶ 1, 738 P.2d 852 (1987).

"There is no liability for intrusion upon seclusion unless interference with the plaintiff's seclusion is a substantial one, of a kind that would be highly offensive to the ordinary reasonable person, as the result of conduct to which the reasonable person would strongly object." 241 Kan. 542, Syl. ¶ 2.

Plaintiffs contend that defendant intentionally conducted his operations in such a manner as to intrude upon their solitude and that the smell from defendant's operation would be highly offensive to a reasonable person.

We conclude that the trial court was correct in finding that defendant was entitled to summary judgment on plaintiffs' claim for invasion of privacy. The nature of the *intrusion* involved is distinguishable from that contemplated under Kansas law or the Restatement.

The essence of claims for unreasonable intrusion upon seclusion is that an individual's right to be left alone is interfered with by defendant's physical intrusion, or by an intrusion of defendant using his or her sensory faculties. Comment b of the Restatement (Second) of Torts § 652B (1976) makes this point:

"The invasion may be by physical intrusion into a place in which the plaintiff has secluded himself, as when the defendant forces his way into the plaintiff's room in a hotel or insists over the plaintiff's objection in entering his home. It may also be by the use of the defendant's senses, with or without mechanical aids, to oversee or overhear the plaintiff's private affairs, as by looking into his upstairs windows with binoculars or tapping his telephone wires. It may be by some other form of investigation or examination into his private concerns, as by opening his private and personal mail, searching his safe or his wallet, examining his private bank account, or compelling him by a forged court order to permit an inspection of his personal documents."

While liability for the intrusion does not require publication of a plaintiff's private affairs, it does require that the defendant

place himself physically, or by means of his senses, within plaintiff's zone of privacy. The facts of this case may be distinguished from all other Kansas cases which have considered claims for intrusion upon seclusion. In this case, there is no physical intrusion by the defendant, nor by defendant's senses.

The first Kansas case to recognize an action for intrusion upon seclusion was *Froelich v. Adair*, 213 Kan. 357, 516 P.2d 993 (1973). In that case and the related case of *Froelich v. Werbin*, 219 Kan. 461, 548 P.2d 482 (1976), defendants were accused of invading plaintiff's privacy by hiring a hospital orderly to enter plaintiff's hospital room and obtain a sample of his hair.

In *Werner v. Kliewer*, 238 Kan. 289, 710 P.2d 1250 (1985), the plaintiff sued her physician for invasion of privacy due to his disclosure of medical information concerning her without her consent.

In *Moore v. R.Z. Sims Chevrolet-Subaru, Inc.*, 241 Kan. 542, the plaintiff claimed an employee of the defendant had intruded upon her seclusion by coming into the nonpublic kitchen office area of the cafe where she worked.

In all of these cases, the defendant is alleged to have intruded physically, or by means of the defendant's senses, into the presence of the plaintiff. In the instant case, there is no such intrusion by the defendant. The only intrusion alleged is that of the smell caused by the activities conducted on defendant's property. Plaintiffs' private affairs are not exposed to defendant's physical presence or the presence of defendant's senses. This distinction between the factual claims asserted in the instant case and those illustrated in *Froelich*, *Werner*, and *Moore* and the comments to the Restatement causes us to conclude the trial court was correct in granting summary judgment in favor of the defendant on plaintiffs' claim for invasion of privacy.

## TRESPASS

Plaintiffs request injunctive relief and damages for defendant's allowing his livestock to stray upon plaintiffs' property from time to time. The trial court found plaintiffs failed to show any evidence of actual damages and therefore granted summary judgment to the defendant.

In ruling that plaintiffs' claim for trespass failed absent a showing of actual damages, the trial court erred.

The general rule in Kansas is that the law infers some damage, without proof of actual injury, in every case where there has been a trespass. *Longenecker v. Zimmerman,* 175 Kan. 719, 721, 267 P.2d 543 (1954). "In an action of trespass the plaintiff is always entitled to at least nominal damages, even though he was actually benefited by the act of the defendant." 175 Kan. at 721. In addition, the trial court's ruling fails to address plaintiffs' claim for injunctive relief based on the trespass.

## STATUTE OF LIMITATIONS AND LACHES

The trial court found that the only acts of the defendant which were not covered by K.S.A. 2-3201 *et seq.* could not provide the basis for the plaintiffs' nuisance claim because they were barred by the applicable statute of limitations. K.S.A. 1992 Supp. 60-513(a)(4).

On appeal, plaintiffs argue that equitable estoppel bars defendant's assertion of the defenses of laches and the statute of limitations.

The acts that plaintiffs complain of are: (1) Defendant burned hay in the 1.8-acre holding pen when the wind was from the east, and the smoke engulfed plaintiffs' property; (2) in 1987 or 1988, defendant kept approximately 40 hogs in the 1.8-acre holding pen, thereby causing a noxious odor; and (3) defendant runs a feedlot-type operation and does not adequately clean out the pen, causing a noxious odor from the ensilage feed and manure.

In response to the defendant's activities, the plaintiffs complained to KDHE. KDHE told defendant that the keeping of the hogs in the pen violated state law and directed him to cease burning. Defendant has complied with these instructions. Because these incidents occurred prior to 1989, the statute of limitations would have run on these acts, and they could provide no basis for plaintiffs' nuisance claim. In this respect the trial court was correct.

This court has recognized that nuisance comes in several forms. "Liability for nuisance may rest upon (1) an intentional invasion of the plaintiff's interest, or (2) a negligent one, or (3) conduct which is abnormal and out of place in its surroundings, and so

falls fairly within the principle of strict liability." *Sandifer Motors, Inc. v. City of Roeland Park,* 6 Kan. App. 2d 308, Syl. ¶ 6. "To create an 'intentional' nuisance, it is not enough to intend to create a condition causing harm; the defendant must either specifically intend to damage the plaintiff or act in such a way as to make it 'substantially certain' that damage will follow." 6 Kan. App. 2d 308, Syl. ¶ 11.

Although it is not entirely clear, it appears plaintiffs claim intentional nuisance. The nuisance plaintiffs seek to abate is the noxious odors of feed and manure emanating from defendant's feeding operation. Because the feeding operation continues, the statute of limitations would not bar plaintiffs' nuisance claim. See *Simon v. Neises,* 193 Kan. 343, 348, 395 P.2d 308 (1964). While not directly actionable, the prior instances of hay burning and the keeping of hogs are relevant to show the nuisance was intentional.

The trial court did not specifically rule on the issue of laches. However, without a showing that the passage of time before bringing suit on the complained-of acts has resulted in any prejudice to defendant, laches would not bar plaintiffs' nuisance claim. "Delay, by itself, does not constitute laches and an action generally will not be defeated by laches alone unless some prejudice has resulted therefrom to the rights or interests of the adverse party." *Schraft v. Leis,* 236 Kan. 28, Syl. ¶ 8, 686 P.2d 865 (1984).

There has been considerable passage of time since the incidents involving the burning of hay and the keeping of hogs. However, these acts of the defendant have been discontinued and cannot provide a basis for liability in and of themselves, given the statute of limitations. Since these acts cannot provide an independent basis for liability, the lapse of time between their occurrence and the bringing of this claim does not appear to prejudice the rights or interests of the defendant.

## CONCLUSION

The judgment of the trial court granting defendant summary judgment on all of plaintiffs' claims is affirmed in part and reversed in part. Summary judgment is reversed on plaintiffs' nuisance claim. Summary judgment is affirmed on plaintiffs' invasion of

privacy claim. Summary judgment is reversed on plaintiffs' trespass claim. The case is remanded to the trial court for further proceedings.