Terry L. ULRICH, Plaintiff,

v.

K–MART CORPORATION, Defendant.

Civ. A. No. 92–1392–MLB.

United States District Court,
D. Kansas.

July 6, 1994.

Patrik W. Neustrom, Achterberg, Neustrom & Montoya, Salina, KS and Barbara

Scott Girard, Rupe & Girard Law Offices, P.A., Wichita, KS, for plaintiff.

William G. Haynes, Frieden, Haynes & Forbes, Topeka, KS, for defendant.

### MEMORANDUM AND ORDER

BELOT, District Judge.

This case comes before the court on K–Mart's motion for summary judgment, pursuant to Fed.R.Civ.P. 56. (Doc. 41)

#### Uncontroverted Material Facts

Plaintiff is a forty year old female who began working at the K–Mart store in Salina, Kansas, in September, 1987. She initially worked at the checkout counter, and later worked in the pharmacy and with health and beauty aids. In April, 1989, she was assigned to work in layaway. In that capacity, she regularly worked with Larry Denney. Denney had worked at the Salina K–Mart since 1978 and held the title of "loss prevention manager." Ulrich and Denney routinely performed inventory checks together. Ulrich would obtain a printout of all merchandise in layaway from the store manager, Mr. Wickersham. Denney usually checked the merchandise and called out a number to Ulrich, who checked it off of the printout.

On August 5, 1991, Ulrich reported to Dana Armes, K–Mart's personnel manager, an incident of sexual harassment involving Larry Denney which had occurred on July 23, 1991. According to Ulrich, during a package check, Denney stroked her, grabbed her, pulled her to him, and kissed her. After she turned away, Denney grabbed her, pressed against her, felt her breasts and put his hands between her legs. Throughout the ensuing week, Denney came to layaway and put his hands on Ulrich's rear and the back of her legs while making comments. On July 28, 1991, Ulrich took some layaway bags into a room upstairs. As she was stepping down from a ladder, Denney grabbed her. Ulrich quickly walked away.

Upon hearing of Ulrich's complaint, K–Mart's management instructed Denney in writing to have no further contact with Ulrich. Denney and Ulrich stayed away from each other after Ulrich reported the July 23, 1991, incident to Dana Armes.[1] After investigating the incident, K–Mart terminated Denney's employment on September 6, 1991.

Ulrich took a leave of absence from K–Mart on August 23, 1991, and returned to work on December 2, 1991. In the interim period, she filed a charge of discrimination with the Kansas Human Rights Commission (KHRC) and the Equal Employment Opportunity Commission (EEOC), alleging Denney's actions constituted sexual harassment.

Upon Ulrich's return to work, she was given her job in layaway and worked there approximately 30–36 hours per week. On two or three occasions she was assigned to perform the duties of a "door greeter" and checkout person, which she considered a "demotion." (Ulrich depo. p. 97). However, Ulrich continued to receive the same hourly rate of pay and benefits as she had prior to her leave of absence. Upon her return, Ulrich perceived that the other female employees in the store were no longer friendly to her. Ulrich quit her job at K–Mart in April, 1992, because of the unfriendly atmosphere. Thereafter, she filed a second complaint with the EEOC and KHRC alleging she had been demoted in retaliation for filing a previous discrimination charge.

After receiving her right to sue letter from the EEOC, Ulrich commenced this lawsuit, alleging sexual harassment and constructive discharge/retaliation under Title VII[2] and the Kansas Acts Against Discrimination,[3] assault and battery, negligent retention, invasion of privacy, breach of duty to provide harassment free work place, failure to properly hire and train, and loss of consortium.

#### Standards for Summary Judgment

◼ Rule 56(c) of the Federal Rules of Civil Procedure directs the entry of summary

---

1. Ulrich claims that during this period, Denney "... was back in layaway a couple of times. He kicked the door open ... he didn't come near me." (Ulrich depo. p. 110). This is not a material dispute. There is no evidence that anything of a sexual nature occurred after Denney was instructed not to have further contact with Ulrich.

2. 42 U.S.C. § 2000 et seq.

3. K.S.A. 44–1001 et seq.

judgment in favor of the party who "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." A principal purpose "of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses...." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The court's inquiry is to determine "whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Entry of summary judgment is mandated, after an adequate time for discovery and upon motion, against a party who fails to make a showing to establish the existence of an element essential to that party's case, and on which that party bears the burden of proof at trial. *Meredith v. Beech Aircraft Corp.*, 18 F.3d 890, 893 (10th Cir.1994). Summary judgment is inappropriate, however, if there is sufficient evidence on which a trier of fact could reasonably find for the nonmoving party. *Prenalta Corp. v. Colorado Interstate Gas Co.*, 944 F.2d 677, 684 (10th Cir.1991).

■ The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact by informing the court of the basis for its motion. *Martin v. Nannie and the Newborns, Inc.*, 3 F.3d 1410, 1414 (10th Cir.1993). This burden, however, does not require the moving party to "support its motion with affidavits or other similar materials *negating* the opponent's claim." *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2553 (emphasis in original). Once the moving party properly supports its motion, the nonmoving party "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Muck v. United States*, 3 F.3d 1378, 1380 (10th Cir.1993). The court reviews the evidence in a light most favorable to the non-moving party, *e.g.,*

*Thrasher v. B & B Chemical Co., Inc.*, 2 F.3d 995, 996 (10th Cir.1993), under the substantive law and the evidentiary burden applicable to the particular claim. *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513.

### Title VII Claims

■ Title VII prohibits two types of sexual harassment: quid pro quo sexual harassment and hostile work environment harassment.[4] *Hirschfeld v. New Mexico Corrections Dept.*, 916 F.2d 572, 575 (10th Cir.1990). Ulrich alleges the latter type.

Hostile work environment occurs where [sexual] conduct has the purpose of effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment. For sexual harassment to be actionable, it must be sufficiently severe or pervasive to alter the conditions of [the victim's] employment and create an abusive working environment.

*Id.* (Citations omitted).

■ K–Mart argues the sexual harassment is not severe enough to be actionable. The court recognizes that "casual or isolated manifestations of a discriminatory environment" do not give rise to a sexual harassment claim. However, Ulrich alleges more than a single instance of harassment. After the first incident on July 23, 1991, Ulrich alleges she was subjected to additional episodes of harassment during the following week. During K–Mart's investigation, Denney denied some of the more egregious acts of misconduct and contended that others were consensual. For purposes of the motion, the court will accept Ulrich's version of the conduct which is sufficiently serious to create working conditions that fall within the statute's proscription. The court finds Denney's conduct constituted hostile environment sexual harassment.

### Basis of K–Mart's Liability

### Scope of Employment Harassment

■ In considering K–Mart's liability for Denney's conduct, three potential bases of

---

4. The standards governing sexual harassment claims under the Kansas Acts Against Discrimination are identical to those arising under Title VII.

liability have been delineated by the Tenth Circuit. *Griffith v. State of Colo., Div. of Youth Services,* 17 F.3d 1323, 1330 (10th Cir.1994) (Citations omitted). The first basis is when the agent (Denney) commits sexual harassment while acting within the scope of his employment. In *Hicks v. Gates Rubber Co.,* 833 F.2d 1406 (10th Cir.1987), the Tenth Circuit explained that this theory was generally inapplicable to sexual harassment cases because "sexual harassment simply is not within the job description of any supervisor or any other worker in any reputable business." *Id.* at 1417–18 (Citation omitted).

■ In the case at bar, K–Mart correctly asserts that grabbing, hugging, and fondling Ulrich were not within Denney's job description. In fact, K–Mart's employee handbook expressly stated that sexual harassment was prohibited. The handbook's definition of sexual harassment covers Denney's conduct. The court finds that Denney's actions were not within the scope of his employment at K–Mart.

### Negligence in Responding to Hostile Work Environment

■ The second basis of employer liability is where the employer is negligent or reckless in failing to respond to hostile work environment sexual harassment by employees. Employer negligence means "failing to remedy or prevent a hostile or offensive work environment of which management-level employees knew, or in the exercise of reasonable care should have known." *Hirschfeld,* 916 F.2d at 577 (quoting *EEOC v. Hacienda Hotel,* 881 F.2d 1504, 1516 (9th Cir.1989)).

Ulrich argues that K–Mart had actual or constructive knowledge of Denney's harassment of other female employees prior to the incident involving Ulrich. She points to evidence that Denney had three adulterous affairs with K–Mart employees, the last of which she contends K–Mart's management either knew or should have known of.

■ The court is unpersuaded by Ulrich's argument. Assuming, without deciding, that K–Mart management knew of the "affair" between Denney and "Paula," the evidence clearly indicates that the relationship was consensual. The debate rages on regarding the advisability of "relationships" between fellow employees. However, the fact that an employer has knowledge that some of its employees are having sexual affairs with one another does not give an employer knowledge that a hostile work environment exists. The sexual advances must be unwelcome to trigger a duty on the employer to act to prevent them. In this case, it is significant that no female employee with whom Denney allegedly was having an affair ever complained to K–Mart's management.[5] Other female co-employees who worked with Denney never complained to K–Mart's management about Denney's behavior prior to July 23, 1991.

Once K–Mart's management received Ulrich's complaint, it acted promptly to rectify the situation. Denney was warned by K–Mart's management to have no further contact with Ulrich and no further sexually harassing contact occurred. K–Mart took written statements from both Denney and Ulrich. Once month after receiving Ulrich's complaint, Denney's employment at K–Mart was terminated. In light of this evidence, the court finds that K–Mart was not negligent in failing to remedy a hostile work environment.

### Harassment By a Person Having Supervisory Authority

■ The third basis for employer liability is where an authority or agency relationship

---

5. Karen Arace testified that she told Connie Webb, the assistant personnel manager, that Denney was "... going to do something to a person sooner or later, to one of the women in that store ... I just had that feeling." (Arace depo. pp. 30–31). Arace says that she told Webb about sexual suggestions and "innuendos" made by Denney but she admits that she did not tell Webb about the times Denney "touched me." The record does not reveal when Arace had her conversation with Webb. The excerpts of Webb's deposition (Doc. 42, Exhibit T) contain nothing about Arace's report.

Taking Arace's testimony at face value, the court finds it insufficient to create an issue of fact on the question of whether K–Mart management was aware, prior to July 23, 1991, of sexual harassment by Denney. A statement that an employee "is going to do something" is not equivalent to a credible report of sexual harassment.

aids the harasser. Under this theory, K–Mart may be held liable for Denney's actions even though they were outside the scope of his delegated authority if Denney purported to act or speak on behalf of K–Mart and there was reliance upon his apparent authority, or he was aided in accomplishing the harassment by the existence of the agency relation. *Hirschfeld,* 916 F.2d at 579.

■ Although Ulrich purports to controvert whether Denney exercised supervisory responsibilities (Doc. 54, paras. 40, 42–44, 46–47, 73), the evidence is clear that he did not. While Denney had the title of "manager", he did not hire and fire anyone, did not discipline anyone, and did not control other employees' schedules or their wages. *See Sauers v. Salt Lake County,* 1 F.3d 1122, 1125 (10th Cir.1993) (supervisory position entails the exercise of significant control over an employee's hiring, firing or conditions of employment). Denney was responsible for the store's surveillance and security. He notified management in the event of an in-store theft. Denney was responsible for checking the store's inventory and was to notify store management if something was remiss. In carrying out these duties, he worked with Ulrich. He appears to have exercised some non-supervisory authority over her. This does not render K–Mart liable. *Hirschfeld,* 916 F.2d at 579, n. 7 (mere delegation of non-supervisory authority does not give rise to employer liability) (emphasis added). Significantly, there is nothing in the excerpts of Ulrich's deposition which indicates that Denney used any supervisory authority to facilitate his sexual harassment of Ulrich.

The court holds that K–Mart is not liable for hostile work environment sexual harassment under Title VII or the Kansas Acts Against Discrimination.

### Constructive Discharge/Retaliation

■ Ulrich argues that she was constructively discharged in retaliation for filing discrimination charges with the EEOC and KHRC. To make out a prima facie case of retaliation, Ulrich must prove: (1) protected opposition to discrimination or participation in a proceeding arising out of discrimination; (2) adverse action by the employer; and (3) a causal connection between the protected activity and the adverse action. *Sauers,* 1 F.3d at 1128 (Citation omitted).

K–Mart argues that Ulrich cannot show that it took adverse action against her. In K–Mart's view, Ulrich voluntarily quit her employment in April, 1992. Ulrich, on the other hand, contends that she was constructively discharged.

■ In order to establish a claim of constructive discharge under Title VII, Ulrich must prove that K–Mart's discriminatory conduct produced working conditions that a reasonable person would view as intolerable. *Daemi v. Church's Fried Chicken, Inc.,* 931 F.2d 1379, 1386 (10th Cir.1991) (Citations omitted). Ulrich bases her claim on the fact that when she returned to work in December, 1991, following her leave of absence, she was occasionally assigned the job of door greeter. This assignment was in addition to her job in layaway, where she continued to work from 30 to 36 hours per week. Ulrich's pay and benefits remained the same.

■ Ulrich states in her brief that "ample evidence" suggests she was constructively discharged. Ulrich does not identify this "ample evidence." The uncontroverted facts provide no support for the view that Ulrich's working conditions were intolerable. Ulrich testified in her deposition that she quit because she felt K–Mart was not a friendly environment. She considered it a demotion that she was assigned on a few occasions to perform duties as a door greeter and checker. A person's subjective view of the atmosphere or dignity of their employment is insufficient to create a factual question for the jury as to whether a constructive discharge occurred. The test for constructive discharge is an objective one. Ulrich received the same level of pay and benefits and performed her same job in layaway the majority of the time. A reasonable person in Ulrich's position would not view having to perform the duties of door greeter and checker for limited periods of time as intolerable.

The court finds that Ulrich was not constructively discharged. The court therefore

holds that no impermissible retaliation in violation of Title VII occurred.

## Assault and Battery

K–Mart argues that Ulrich's assault and battery claims are barred by the statute of limitations. Under K.S.A. 60–514(b), an action for assault or battery must be brought within one year. Ulrich filed her complaint on October 23, 1992, more than one year after the conduct that forms the basis of her assault and battery claims.

The court holds that Ulrich's assault and battery claims are barred by the statute of limitations.

## Negligent Retention, Failure to Properly Hire and Train

Ulrich seeks to hold K–Mart liable for its negligence in failing to properly hire and train Denney and retaining him in its employ. K–Mart argues that it cannot be held liable because it had no knowledge of Denney's propensity to sexually harass fellow employees, and such conduct was not authorized by K–Mart, did not promote K–Mart's business and was not a part of Denney's duties.

In *Kansas State Bank & Tr. Co. v. Specialized Transportation Services, Inc.*, 249 Kan. 348, 819 P.2d 587 (1991), the Kansas Supreme Court addressed a similar claim. In *Specialized Transportation Services*, the parents of a six year old girl afflicted with Down's syndrome brought an action arising out of the alleged sexual molestation of their daughter by her school bus driver, H. Ardon Davidson. They sued the defendants on theories of respondeat superior, and negligent hiring, retention and supervision of Davidson. The defendants moved for a directed verdict, arguing that they neither knew or should have known that Davidson had a propensity to sexually molest children. The trial court denied the motion, and the jury returned a verdict for $1.8 million against the defendants. Defendants appealed, challenging the jury instructions on this issue.

The Supreme Court affirmed and restated the principles governing such claims:

> When a third party asserts a negligent retention and supervision claim against an employer, liability results not because of the employer-employee relationship, but because the employer had reason to believe that an undue risk of harm to others would exist as a result of the employment of the alleged tortfeasor. The employer is subject to liability only for such harm as is within that risk. If therefore, the risk exists because of the quality of the employee, there is liability only to the extent that the harm is caused by the quality of the employee that the employer had reason to believe would be likely to cause harm.

*Id.* at 362, 819 P.2d 587.

Applying these principles to the case at bar, Ulrich has produced no evidence to indicate that K–Mart had knowledge that Denney was sexually harassing other employees. Prior to August 5, 1991, K–Mart had no such knowledge. Dana Armes, K–Mart's personnel manager, testified that she considered Denney to be a gentleman and had received no previous complaints of any sexually offensive, unwelcome or unwanted conduct. (Defendant's Statement of Uncontroverted Fact # 50) The other female employees whom Ulrich identifies as having been the recipient of unwanted physical contact from Denney all testified that they did not complain to K–Mart's management about any of the incidents prior to July 23, 1991. Accordingly, the court holds that K–Mart is not liable for negligent hiring, retention and supervision of Denney.[6]

---

6. The court has some reservations about whether such claims are cognizable in the circumstances presented here. In *Polson v. Davis*, 895 F.2d 705 (10th Cir.1990), the court held that Kansas did not recognize the common law tort of negligent supervision. *Id.* at 710; *See also Anspach v. Tomkins Industries, Inc.*, 817 F.Supp. 1499, 1509 (D.Kan.1993) (J. O'Connor) (court refuses to permit employee alleging that her employer was negligent in supervising her immediate superior, thereby allowing him to violate her civil rights from recovering on the theory of negligent supervision); *but see Specialized Transportation Services, Inc.*, 249 Kan. at 350, 819 P.2d 587 (plaintiff files suit on theories of respondeat superior, negligent hiring, and negligent retention and supervision). The *Polson* court also predicted that the Kansas Supreme Court would adopt the view that the Kansas Acts Against Discrimination, K.S.A. 44–1001 *et seq.* provides the exclusive

## Invasion of Privacy

The incident of sexual harassment on July 23, 1991, took place in a work area of the second floor of the K–Mart store. Denney was authorized to enter the work area where the incident took place, and therefore his presence in the area was within the scope of his employment. Ulrich claims K–Mart is liable for Denney's invasion of privacy.

■ In order to prevail on his invasion of privacy claim, Ulrich must prove: first, something in the nature of an intentional interference in the solitude or seclusion of her physical being; and second, that the intrusion would be highly offensive to a reasonable person. *Werner v. Kliewer*, 238 Kan. 289, 294, 710 P.2d 1250 (1985).

■ K–Mart argues that Ulrich cannot show that she was in an area of seclusion or solitude. In support of this argument, K–Mart relies on *Moore v. R.Z. Sims Chevrolet–Subaru, Inc.*, 241 Kan. 542, 738 P.2d 852 (1987), wherein the Supreme Court held that an automobile dealer's employee's entrance into the kitchen-office area of a cafe to speak with a customer about repossession of a truck was not an invasion of privacy. *Id.* at 549, 738 P.2d 852. The Supreme Court stated, "It is difficult to perceive the kitchen of a cafe as being an area of seclusion or solitude." *Id.*

Ulrich attempts to distinguish *Moore* on the basis that a debtor-creditor relationship existed between the parties, and the fact that the debtor did not show up for a meeting precipitated the creditor's entrance into the kitchen-office area to talk to the debtor. The court is not persuaded by Ulrich's argument. A work area of a business, unlike, for example, a bathroom or a bedroom, is not a place of solitude or seclusion. While customers may not be expected to enter the room, other employees could be expected to enter. Like the kitchen-office in *Moore,* the work area is an adjunct to the public areas of the building. A reasonable person would not view a fellow employee's presence in the work area as offensive.

The court holds that K–Mart is not liable to Ulrich for invasion of privacy.

## Failure to Provide a Harassment-Free Workplace

■ Not content with the remedies provided by Title VII and the KAAD, Ulrich alleges K–Mart is liable for a tort she labels failure to provide a harassment-free workplace. Ulrich does not discuss this tort in her brief, and the court has not found, nor did it expect to find, any authority discussing this tort.

In the court's view, Kansas does not recognize such a tort. The employer is already under a duty, by virtue of Title VII and the KAAD, to provide a harassment-free workplace. Statutory remedies exist for employees subjected to sexual harassment. Recognition of such a tort would permit persons in Ulrich's position to circumvent the administrative exhaustion requirements contained in the statutory scheme. The court is convinced that the existence of such a statutory remedy displaces such a tort claim.

The court grants summary judgment to K–Mart on Ulrich's failure to provide a harassment-free workplace claim.

## Loss of Consortium

■ Ulrich claims she has sustained damages for loss of consortium as a result of the sexual harassment. The court's rulings finding K–Mart is not liable for any personal injury Ulrich may have suffered renders Ulrich's claim untenable. A plaintiff cannot maintain an action for loss of consortium against a defendant unless her or she sustained personal injury at the hands of that defendant. K.S.A. 23–205.

The court grants K–Mart's motion for summary judgment on Ulrich's loss of consortium claim.

state remedy for violations of public policy enunciated therein. *Id.* at 709.

In this case, the conduct forming the basis of Ulrich's Title VII/KAAD claim is the same conduct underlying her claims of negligent hiring and retention. Arguably the existence of a statutory remedy precludes assertion of these common law tort claims. In light of our holding that K–Mart is not liable on these claims, the court finds it unnecessary to decide this question.

*Ulrich's Motion to Strike
Pleading (Doc. 58)*

Ulrich moves to strike defendant's reply to her response to defendant's motion for summary judgment. She contends, *inter alia,* that the reply "greatly expands" the motion and raises "new legal claims." She does not specify details and the court will not speculate about what the new legal claims may be, if any. The court does not perceive new legal claims, in any event. The motion to strike (Doc. 58) is denied.

K–Mart's motion (Doc. 41) for summary judgment is hereby granted.

A motion for reconsideration of this order is not encouraged. Should a motion be filed, it shall comply with the requirements set forth in *Comeau v. Rupp,* 810 F.Supp. 1172, 1174 (D.Kan.1992) and shall not exceed 5 pages, including exhibits and attachments. A response shall be similarly limited and a reply shall not be filed.

IT IS SO ORDERED.