**Maurine O'SHEA, Plaintiff,**

v.

**YELLOW TECHNOLOGY SERVICES, INC., Defendant.**

**No. CIV. A. 96–2370–GTV.**

United States District Court,
D. Kansas.

Sept. 26, 1997.

James E. Kunce, Overland Park, KS, for Plaintiff.

Robert W. McKinley, Tedrick Addison Housh, III, Swanson, Midgley, Gangwere, Kitchin & McLarney, LLC, Kansas City, MO, for Defendant.

### MEMORANDUM AND ORDER

VAN BEBBER, Chief Judge.

In this action, plaintiff claims defendant subjected her to hostile work environment sexual harassment and age-related hostile work environment harassment in violation of Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000e *et seq.*, the Kansas Acts Against Discrimination (KAAD), K.S.A. 44–1001 *et seq.*, and the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq.* The case is before the court on defendant's motion for summary judgment (Doc. 41) pursuant to Fed.R.Civ.P. 56(b). For the reasons set forth below, defendant's motion is granted.

### I. Summary Judgment Standards

A moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). One of the principal purposes of summary judgment is to isolate and dispose of factually unsupportable claims or defenses, and Rule 56 should be interpreted in a way that accomplishes this purpose. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The court's proper inquiry is whether there is a need for a trial; in other words, whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. This burden may be discharged by "showing" that there is an absence of evidence to support the nonmoving party's case. *Celotex,* 477 U.S. at 325, 106 S.Ct. at 2553–54. Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party, who "may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson,* 477 U.S. at 256, 106 S.Ct. at 2514. Thus, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *See id.* The court reviews the evidence on summary judgment under the substantive law and based on the evidentiary burden that the party will face at trial on the particular claim. *See id.* at 254, 106 S.Ct. at 2513.

### II. Factual Background

The following facts are either uncontroverted or based on evidence viewed in a light most favorable to the plaintiff. Immaterial facts and facts not properly supported in the record are omitted.

Defendant hired plaintiff as a systems programmer in June 1991, and promoted her to systems programmer specialist in October 1992. Plaintiff's primary responsibilities were to upgrade and maintain the products

associated with defendant's MVS mainframe system.

Plaintiff alleges the following incidents of sexual and/or age-related harassment occurred while she was on the MVS programming team:

1. In 1993, someone placed a fake human bowel movement in plaintiff's chair and spread toilet paper in her cubicle.

2. Plaintiff was not invited to join the male programmers when they left the building for lunch. She was only included when she invited herself.

3. On an unspecified date, David Corwin entered plaintiff's cubicle and shouted that she was doing things incorrectly and was going to "screw up the whole system." According to plaintiff, Corwin never talked to the younger male programmers in such a fashion.

4. Also on an unspecified date, Ted Keller approached plaintiff in her cubicle and loudly announced that he knew how old she was.

In January 1994, plaintiff joined the team of system programmers working on UNIX operating systems. As a member of the UNIX team, plaintiff's team leader was Vicky Logan, a senior systems programmer. Ms. Logan, in turn, reported to Joe Searle, the manager of systems programming.

In February 1994, defendant began to implement a computer project called FileNet, which was installed on a UNIX operating system. Defendant placed Gary Jones on the UNIX team as a UNIX systems administrator. Jones was involved in technical support of the FileNet project and did not supervise plaintiff. Plaintiff contends that Jones created a hostile work environment by directly harassing her and by demeaning her in the eyes of their coworkers. The record refers to following incidents directly and indirectly arising out the conflict between plaintiff and Jones:

1. On June 3, 1994, plaintiff told Joe Searle, that she was upset because Jones was working with consulting personnel on the installation of FileNet equipment and not explaining the process to her. Searle told plaintiff she needed to get more involved if she felt she needed to know what Jones was doing.

2. On June 16, 1994, plaintiff complained to Searle that Jones was attending a programming class instead of her. She further stated that Jones did not communicate with her, that the "men around here" thought they were better than she, and that these problems made it difficult for her to do her job.

3. On various and unspecified occasions, plaintiff overheard Jones making fun of his wife and making derogatory comments about women talking too much and being less intelligent than men.

4. On an unspecified date, plaintiff overheard Jones telling his coworkers about a dream in which he watched a woman jumping naked on a trampoline and described how the woman's breasts looked as she jumped.

5. On an unspecified date, plaintiff overheard Jones saying, "Playboy is superior to a wife because at least with Playboy you get variety."

6. On another unspecified date, plaintiff witnessed a coworker, who was doing an impression of Jones, state, "I just don't get it. I treat women like crap and they just keep coming back for more." Joe Searle also witnessed this imitation but did not say or do anything in response.

7. Jones repeatedly commented on his belief that plaintiff was planning to file a sexual harassment suit against him. These and other comments caused plaintiff's male coworkers to cease "almost all contact with her" and to "treat her like a nonentity."

8. On one occasion, Jones and fellow team member Charles Bockting completely ignored plaintiff when she attempted to discuss the FileNet project.

9. The UNIX team members would not give necessary passwords to plaintiff claiming she was not experienced enough. The password was given to two younger male employees who were "much less experienced" than plaintiff.

10. At an August 1, 1994 meeting, plaintiff complained that Jones had stated that plaintiff was incompetent and incapable of doing her job and that plaintiff was going to file a harassment claim against him. Jones admitted that he had said plaintiff was incompetent and incapable because he believed a former MVS systems programmer could not step into the role of a UNIX systems administrator, as plaintiff had.

11. On August 2, 1994, plaintiff and Keller discussed plaintiff's continuing problems with Jones and other male coworkers. Specifically, plaintiff said she could no longer do her job because Jones was turning her team members against her, members of her team were completely uncooperative in providing necessary information, and that her reputation was being "trashed." Keller attempted to discuss these concerns, but the meeting ended when Keller yelled, "Can't you see that you're the problem." At this point, plaintiff said she quit, and headed directly to the office of Jim Flemming, defendant's Manager of Human Resources. In Flemming's office, plaintiff, Flemming, and Keller discussed plaintiff's concerns. Plaintiff subsequently rescinded her resignation and agreed to provide weekly status reports regarding any continuing problems with Jones.

12. On several occasions after the August 1, 1994 meeting, plaintiff approached Keller to discuss her continuing problems with Jones. On one unspecified occasion, Keller refused to acknowledge that there was a problem and told plaintiff to go on vacation and get a tan. Later in this same conversation, Keller suggested plaintiff use Retin–A, a lotion for aging skin.

13. Plaintiff's team members initially respected her until they were influence by Jones' acts and opinions toward plaintiff.

14. On August 24, 1994, Keller took plaintiff and fellow team member Glenn Richards out to lunch. According to plaintiff, Richards was cold to her throughout lunch and would not speak to her beyond monosyllabic answers. Shortly after lunch, plaintiff noticed that Richards had a file that she needed. She asked Richards for the file; he refused to give it to her. Plaintiff immediately met with Keller, Flemming and Richards. A discussion of team work and information sharing ensued until Flemming yelled at plaintiff, "What I see before me is an extremely paranoid person totally lacking in self-confidence." At this point, plaintiff said, "I will see you in court."

Additional facts will be provided as necessary.

## III. Discussion

### A. Allegations Properly Before the Court

A plaintiff must exhaust her administrative remedies before bringing suit under Title VII, the ADEA, and the KAAD. *See Aramburu v. The Boeing Co.*, 112 F.3d 1398, 1409 (10th Cir.1997). Title VII and the ADEA require that a plaintiff precede her court filing by an administrative charge with the EEOC. Additionally, if a plaintiff brings supplemental state claims based on the KAAD, she first must file a charge with the Kansas Human Rights Commission. *See Griffin v. Dodge City Coop. Exch.*, 23 Kan. App.2d 139, 148, 927 P.2d 958, 965 (1997); K.S.A. 44–1005(a). The purpose of these administrative filing requirements is to give an employer notice of the charges and an opportunity to comply voluntarily with the statutes. *See Aguirre v. McCaw RCC Comm., Inc.*, 923 F.Supp. 1431, 1433 (D.Kan.1996).

Under Title VII and the ADEA, the preceding charge of harassment must be filed with the EEOC within 300 days after the alleged discrimination. *See Martin v. Nannie and the Newborns, Inc.*, 3 F.3d 1410, 1414 (10th Cir.1993); 42 U.S.C. § 2000e–5(e); 29 U.S.C. § 626(d). Under the KAAD, however, an administrative charge must be filed within 180 days after the alleged discrimination. K.S.A. 44–1005(i). Any alleged discrimination occurring outside of these time frames will be time-barred and not considered by the court unless the acts complained of constitute part of a continuing pattern or practice of discrimination. *See Martin*, 3 F.3d at 1415; K.S.A. 44–1005(i).

Surprisingly, neither party has established the date of plaintiff's simultaneous EEOC and KHRC filing. The court, therefore, is unable to determine which incidents are inside the statutory time frames and which are time-barred. For purposes of this motion, the court will consider all of plaintiff's relevant allegations without regard to their timeliness.

### B. Hostile Work Environment Claims

#### 1. Sexual Harassment

Sexual harassment is behavior that would not occur "but for" the sex of the employee—if the nature of an employee's environment is not due to her gender, she has not been the victim of sex discrimination. *Gillum v. Federal Home Loan Bank,* 970 F.Supp. 843, 847–48 (1997) (citing *Gross v. Burggraf Constr. Co.,* 53 F.3d 1531, 1537 (10th Cir. 1995)). Furthermore, "[c]onduct that is not severe or pervasive enough to create an objectively hostile environment—an environment that a reasonable person would find hostile or abusive—is beyond Title VII's purview." *Harris v. Forklift Sys. Inc.,* 510 U.S. 17, 21, 114 S.Ct. 367, 370, 126 L.Ed.2d 295 (1993). Therefore, the court must determine whether a reasonable jury could find the conduct alleged by plaintiff was (1) was based on her gender or on sexual animus; and (2) pervasive or severe enough to objectively alter the terms, conditions, or privileges of plaintiff's employment. *See Gross,* 53 F.3d at 1539.

■ In opposition to defendant's motion for summary judgment, plaintiff presents evidence of numerous instances of coworker conduct that she argues amounts to a hostile work environment. The court must determine if this conduct was actually based on gender or on sexual animus and, if so, whether the conduct was pervasive or severe enough to alter the terms, conditions, or privileges of plaintiff's employment. *See Gillum,* 970 F.Supp. 843, 848–49.

Plaintiff presents evidence that Jones described one sexual dream and once compared his wife's qualities to those of Playboy magazine. However, the record shows that none of these comments were directed at or made reference to plaintiff. Such comments are crude and impolite, but there is no evidence to suggest Jones made these comments because of plaintiff's gender or out of sexual animus.

Plaintiff claims Jones worked with consulting personnel instead of her and that Jones attended a programming class instead of her. Again, plaintiff presents no evidence to suggest she was not included on these occasions because of her gender.

Plaintiff contends that Jones repeatedly stated that plaintiff was incompetent and incapable of doing her job. Plaintiff provides no evidence suggesting these comments were made because of her gender. In fact, Jones expressly stated that he thought plaintiff was incapable and incompetent because he believed a former MVS programmer could not step into the role of a UNIX systems administrator.

■ Plaintiff also claims that Jones did not communicate with her, that other coworkers tended to ignore her, and that she was only included in outside lunches when she invited herself. While such conduct may contribute to a hostile or abusive environment, it is not actionable unless plaintiff can show it based on her gender or racial animus—she has not done so. Addressing this issue, the Tenth Circuit has said that general harassment, if not sexual, is not actionable. *Bolden v. PRC Inc.,* 43 F.3d 545, 550 (10th Cir.1994).

■ Plaintiff also claims that the three times she was yelled at by male coworkers constituted sexual harassment. While working on the MVS team, David Corwin shouted that plaintiff was going "to screw up the whole system." On August 2, 1994, Keller yelled at plaintiff, "Can't you see that you're the problem." Finally, on August 24, 1994, plaintiff's last day of work ended when Flemming yelled, "What I see before me is an extremely paranoid person totally lacking in self-confidence." Although these outbursts may have been rude or unprofessional, plaintiff has made no showing that they would not have occurred but for her gender. *See Gillum,* 970 F.Supp. 843, 850.

Plaintiff further contends that her coworkers respected her until they were influenced by Jones' acts and opinions toward plaintiff.

Plaintiff, however, can point to only two incidents manifesting this disrespect. On an unspecified date, plaintiff claims Jones and Charles Bockting completely ignored her when she inquired about the FileNet project. Also, on plaintiff's last day, Glenn Richards did not speak to her throughout lunch and refused to give plaintiff an important file. Although such behavior is rude and counterproductive, there is no evidence suggesting that it was motivated by plaintiff's gender or by sexual animus harbored by Jones, Richards, or Bockting.

■ Plaintiff also claims Jones repeatedly made derogatory comments about women. The court finds that Jones made such comments only about women. Although few, if any, of these statements were made directly to plaintiff, the court concludes that a reasonable jury could find these comments were based on plaintiff's gender or sexual animus.

Finally, plaintiff claims that Jones repeatedly stated that plaintiff was planning to file a sexual harassment suit against him. As a result of these statements, plaintiff's male coworkers began to avoid contact with and ignore plaintiff. Assuming plaintiff was ignored by many of her coworkers, she provides no proof that this adverse treatment was motivated by her gender. However, due to the subject matter of Jones' statements, a reasonable jury could find that the statements were motivated by plaintiff's gender.

■ The next question is whether the conduct suffered by plaintiff was pervasive or severe enough to objectively alter the terms, conditions, and privileges of her employment. Only that conduct which the court has found to be based upon gender or sexual animus will be considered at this stage of the inquiry. The evidence suggests that Jones repeatedly made derogatory statements about women and repeatedly stated his belief that plaintiff was planning to file a sexual harassment suit against him. The court concludes that these statements and the effect of these statements were neither pervasive nor severe

enough to have created an objectively hostile work environment. Accordingly, summary judgment is granted to defendant on plaintiff's Title VII and KAAD claims.[1]

### 2. Age-related Harassment

■ Plaintiff also alleges that she was subjected to an age–related hostile work environment in violation of the ADEA.[2] Defendant appears to argue that under the ADEA, hostile work environment claims are not actionable. The court disagrees. The ADEA makes it unlawful to "discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment" on the basis of that individual's age. 29 U.S.C. § 623(a)(1). This language is identical to Title VII's prohibition against discrimination on the basis of race, color, religion, sex, or national origin. *See* 42 U.S.C. § 2000e–2(e)(1). In fact, the Supreme Court has noted the similarities between the two statutes and indicated that "the prohibitions of the ADEA were derived in haec verba from Title VII." *See Lorillard v. Pons,* 434 U.S. 575, 584, 98 S.Ct. 866, 872, 55 L.Ed.2d 40 (1978). Because "[t]here is no sound reason why this court should interpret identical statutory language in the context of age discrimination any differently," this court holds that plaintiff may show a violation of the ADEA by proving the existence of a hostile work environment. *See Drez v. E.R. Squibb & Sons, Inc.,* 674 F.Supp. 1432, 1436 (D.Kan. 1987) *see also Sischo–Nounejad v. Merced Community College Dist.,* 934 F.2d 1104, 1109 (9th Cir.1991).

■ To demonstrate the existence of an age-related hostile working environment, plaintiff must prove three elements. First, plaintiff must show that she experienced age-related verbal or physical conduct at work. As a part of this showing, plaintiff must establish a nexus between the complained of conduct and her age. *Henson v. City of Dundee,* 682 F.2d 897, 904 (11th Cir.1982). Second, she must show the age-related con-

1. Although not controlling, federal decisions applying Title VII are persuasive authority in construing KAAD claims because the statutes are analogous. *See Best v. State Farm Mut. Auto. Ins. Co.,* 953 F.2d 1477, 1479 (10th Cir.1991). Therefore, the court has applied Title VII standards in granting summary judgment on plaintiff's KAAD claim.

2. Plaintiff failed to state a corresponding state law claim under the Kansas Age Discrimination in Employment Act, 44–1111 *et seq.*

duct was unwelcome. *Meritor Sav. Bank v. Vinson,* 477 U.S. 57, 68–69, 106 S.Ct. 2399, 2406–07, 91 L.Ed.2d 49 (1986). Finally, she must show that the unwelcome conduct was so severe or pervasive that it rendered the work environment hostile and abusive. *Harris,* 510 U.S. at 20–22, 114 S.Ct. at 369–71.

Even when construed in a light most favorable to plaintiff, the court concludes no reasonable person would find that the isolated and infrequent incidents of harassment allegedly based on plaintiff's age created a hostile work environment. The court is only able to locate three instances of alleged age-related harassment: (1) Ted Keller announced that he knew how old plaintiff was, (2) the denial of passwords to plaintiff when younger, less experienced coworkers received them, and (3) Keller's suggestion plaintiff use Retin–A. The court does not view the first incident as age-related harassment. The record states that Keller was the exact same age as plaintiff; in fact, they shared the same birthday. Plaintiff also fails to establish a nexus between the second and third incidents and her age.[3] Furthermore, even if all three incidents were found to be age–related harassment, they were not pervasive or severe enough to have created an objectively hostile work environment. Accordingly, summary judgment is granted to defendants on the issue of age-related harassment under the ADEA.

IT IS, THEREFORE, BY THE COURT ORDERED that defendant's motion for summary judgment (Doc. 28) is granted.

**IT IS SO ORDERED.**

---

3. In her reply motion, plaintiff omitted the context of the Retin–A comment. After plaintiff told Keller that she suffered severe sun burns while living in Florida, Keller said, "Well, you could get some Retin–A. If you got some Retin–A, that would help." Clearly this is not age-related harassment. The court admonishes plaintiff for her mischaracterization of the above conversation.