Maxine I. DUNBAR, Plaintiff,

v.

THE BOARD OF DIRECTORS OF THE LEAVENWORTH PUBLIC LIBRARY, Defendant.

No.Civ.A. 97–2210–KHV.

United States District Court, D. Kansas.

Feb. 25, 1998.

Michael J. Joshi, Borel & Associates, Kansas City, MO, for Maxine I Dunbar, plaintiff.

Jeffrey L. Baxter, Dean J. Gengler, Chapman, Waters & Baxter, Leavenworth, KS, for Defendants.

## MEMORANDUM AND ORDER

VRATIL, District Judge.

Maxine Dunbar filed suit under the Age Discrimination in Employment Act [ADEA], 29 U.S.C. § 621 *et seq.*, claiming that the Board of Directors of the Public Library of Leavenworth, Kansas, refused to hire her and retaliated against her for filing an administrative complaint with the Equal Employment Opportunity Commission [EEOC]. This matter comes before the Court on *Defendant's Motion For Summary Judgment* (Doc. # 41) filed December 15, 1997. Defendant claims that plaintiff's failure to exhaust administrative remedies under a private internal grievance procedure deprives the Court of subject matter jurisdiction. Alternatively defendant claims that plaintiff cannot establish a prima facie case of age discrimination and that it had legitimate nondiscriminatory reasons for its decisions regarding plaintiff. For reasons stated more fully below, the Court finds that defendant's motion should be sustained in part and overruled in part.

### Summary Judgment Standards

Rule 56(c) of the Federal Rules of Civil Procedure directs the entry of summary judgment in favor of the party who "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Summary judgment is inappropriate, however, if there is sufficient evidence on which a trier of fact could reasonably find for the nonmoving party. *Prenalta Corp. v. Colorado Interstate Gas Co.*, 944 F.2d 677, 684 (10th Cir.1991).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact by informing the court of the basis for its motion. *Martin v. Nannie and the Newborns, Inc.*, 3 F.3d 1410, 1414 (10th Cir.1993). Once the moving party properly supports its motion, the nonmoving party may not rest upon mere allegation or denials of his or her pleadings, "but must set forth specific facts showing that there is a genuine issue for trial." *Muck v. United States*, 3 F.3d 1378, 1380 (10th Cir.1993).

### Factual Background

The following facts are either uncontroverted or, where controverted, viewed in the light most favorable to plaintiff. Immaterial facts and facts not properly supported in the record are omitted.[1]

In August 1988, plaintiff—who was then 62 years old—applied for employment with the Leavenworth Public Library. The library did not hire her but four months later, in December 1988, plaintiff began working there through the Kansas Green Thumb program. Green Thumb is a federally subsidized program which provides training, work experience and job placement for economically disadvantaged persons who are 55 years of age and older, and who have poor employment prospects. The library qualified as a host agency under Green Thumb. As such, it agreed to help plaintiff obtain employment by providing job skills, training and job referrals, and by considering her for employment in appropriate positions. In return, Green Thumb paid plaintiff's salary.

Plaintiff worked under Green Thumb for seven years, from December 1988 until January 28, 1995. Throughout this period, at roughly six-month intervals, plaintiff's Green Thumb supervisor (Lorzene Aarstad) approached the library director (Winnie Lichtenwalter) about the possibility of hiring plaintiff as a salaried library employee.

Plaintiff initially shelved books in the circulation department. She remained in this position until January 7, 1992, when she moved to the technical services department. Shari Showalter supervised this department, and Doris Woodward, Elaine Knapp and Bonnie McKeon worked with plaintiff there. Shortly before plaintiff changed departments, she signed a placement agreement with Green Thumb and the library. The agreement provided that plaintiff would train with the library from December 16, 1991 to March 6, 1992; that the library would hire plaintiff at the end of this period if her performance had been satisfactory; and that if plaintiff's performance had been satisfacto-

---

**1.** See D.Kan. Rule 56.1 and the *Scheduling Order* (Doc. # 13) filed August 27, 1997.

ry but the library did not hire her, Green Thumb would remove her from the library.

The library did not did not hire plaintiff at the end of the training period, but she nonetheless continued to work there under Green Thumb. Showalter prepared yearly Green Thumb progress reports which she gave to plaintiff. On plaintiff's progress report for 1993, Showalter stated that "Maxine is a real asset to our Technical Services department" and that "[w]e have budgeted to add her to our library paid staff in June, 1994."

In June 1993, Carol Rush (age 29) began working in the technical services department. Rush had no prior training in the field and her job responsibilities were similar to those of plaintiff. Rush began work under the "Kan Work program," a job placement program for individuals who received state support. Kan Work paid Rush's initial salary, but the library began to pay half of it in December 1993 or January 1994.

Plaintiff discussed a paid position with Lichtenwalter in May of 1994, but plaintiff did not believe that Lichtenwalter made her a formal offer. Effective June 1, 1994, Terry McLaughlin replaced Lichtenwalter as library director. McLaughlin and plaintiff also discussed the possibility of a paid position. Although defendant has produced no evidence of a written offer of employment, it asserts that it offered plaintiff a half-time salaried position in July 1994. Plaintiff denies this claim, stating that McLaughlin told her that the library budget had no money to pay her in 1994 or 1995. Because we examine the factual record and reasonable inferences therefrom in the light most favorable to plaintiff, we assume for purposes of this motion that plaintiff's version of the discussions is correct.[2]

On August 26, 1994, plaintiff filed an EEOC charge which alleged that the library had refused to hire her because of her age.[3] McLaughlin told plaintiff's department about the charge and employees discussed the financial impact it might have on the library. In August 1994, McLaughlin wrote a memo

to the library board, seeking permission to advise Green Thumb that the library wished to remove plaintiff, and that the library would terminate its participation in Green Thumb if Green Thumb did not agree to plaintiffs removal. McLaughlin explained that removal was necessary because he had been receiving complaints about plaintiff from members of her department. This statement was untrue, because according to Woodward, Knapp and McKeon, they did not complain to McLaughlin until December 1994 or January 1995. McLaughlin's memo also stated that "unless Maxine files a complaint using the Green Thumb proper procedures, we have no liability." "However," he told the library board, "this still means Maxine is holding the library 'captive' and we are awaiting her action."

Meanwhile, in September 1994, McLaughlin instructed staff to make notes of any incidents that involved "Maxine and her general attitude," or keep a "paper trail" about plaintiff. He also told staff to tell him of any problems, concerns or incidents in writing.

After plaintiff filed her charge of discrimination, McLaughlin began ignoring her and other employees gave her the cold shoulder. In November 1994, someone placed in plaintiff's desk drawer a book entitled "Don't worry, be crabby, Maxine's Guide to Life Book." The book, which is published by Hallmark, features a crabby old woman with a cynical perspective on life.

### Analysis

### I. Failure to exhaust administrative remedies

■ In its reply brief, defendant for the first time argues that the Court lacks subject matter jurisdiction because plaintiff failed to exhaust administrative remedies before filing suit. Defendant relies on a grievance procedure set forth in *The 1994 Senior Community Service Employment Program Calendar/Handbook,* and in doing so, reveals a fundamental misunderstanding of the role of administrative proceedings in an employment discrimination context.

---

2. *Accord Conner v. Schnuck Markets, Inc.,* 121 F.3d 1390, 1392 n. 2 (10th Cir.1997).

3. On April 19, 1995, plaintiff filed a second EEOC charge alleging that defendant retaliated against her for filing this charge.

Filing a charge with the EEOC is a prerequisite to suit under the ADEA. *See* 29 U.S.C. § 626(d) (civil action may not be commenced until 60 days after charge filed with EEOC). Moreover, not only must plaintiff file an administrative charge with the EEOC, she must have done so in compliance with ADEA's explicit time limits. In this case, plaintiff was required to file an EEOC charge within 300 days of defendant's allegedly unlawful action. 29 U.S.C. § 626(d)(2).[4] Defendant cites no legal authority for the proposition that plaintiff had a legal obligation to follow the permissive steps set forth in the *1994 Senior Community Service Employment Program Calendar/Handbook*.[5] Defendant also cites no authority for its argument that the *1994 Senior Community Service Employment Program Calendar/Handbook* has supplanted the statutory procedures set forth above. Accordingly defendant's motion to dismiss plaintiff's claims for lack of subject matter jurisdiction on this basis is overruled.[6]

## II. Discrimination Claims

Defendant argues that plaintiff cannot establish a prima facie case of refusal to hire or retaliation and that legitimate nondiscrimina-

tory reasons dictated its business decisions regarding plaintiff. Where, as here, plaintiff offers no direct evidence of defendant's intent, the Tenth Circuit adopts the burden shifting scheme originally set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), to insure an efficient presentation of circumstantial evidence.[7] Under *McDonnell Douglas*, plaintiff first must establish a prima facie case of discrimination. If plaintiff succeeds, the burden of production shifts to defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment decision. *Randle v. City of Aurora*, 69 F.3d at 451. If defendant meets that burden, all presumptions of discrimination drop from the case. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). The burden then shifts back to plaintiff to prove by a preponderance of the evidence that defendant's proffered reasons for the challenged actions are merely a pretext for discrimination—*i.e.*, that it is "unworthy of belief." *Randle v. City of Aurora*, 69 F.3d at 451. Plaintiff may clear the summary judgment hurdle by demonstrating "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action" such

4. ADEA actually establishes alternative limitation periods of 180 and 300 days. The longer limitation period applies in Kansas because it is a so-called "deferral state," *i.e.*, one having adopted a law against age discrimination and having authorized a state agency to grant relief from age discrimination. *See* 29 U.S.C. § 633(b).

5. The procedure provides that any Green Thumb participant who believes she is a victim of unfair treatment, discrimination or harassment should follow the four step grievance procedure. Green Thumb "encourages" all participants to follow the procedure. *See* Exhibit HHH to *Plaintiff's Memorandum In Opposition To Defendant's Motion For Summary Judgment* (Doc. # 47) filed January 12, 1998, at p. 24.

6. The Court notes that the Green Thumb grievance procedure appears to apply to claims under the ADEA, and the Supreme Court has held that such claims may be the subject of an arbitration agreement, enforceable under the Federal Arbitration Act. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 35, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991). The Tenth Circuit Court of Appeals has also stated that federal employment discrimination claims are subject to arbitration.

*Armijo v. Prudential Ins. Co.*, 72 F.3d 793, 798 (10th Cir.1995); *see also Metz v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 39 F.3d 1482, 1487 (10th Cir.1994) (Title VII and age discrimination claims subject to arbitration under the FAA). The question whether the grievance procedure is enforceable is a very different question, however, from the question whether plaintiffs failure to invoke the grievance procedure deprives the Court of subject matter jurisdiction. Defendant does not seek to compel plaintiff to use the procedure outlined in the *1994 Senior Community Service Employment Program Calendar/Handbook*, nor has it established facts which would warrant such an order.

7. In its reply brief defendant argues that plaintiff's claims must fail because she has not established that age was a "motivating" or "determining" factor in her failure to obtain employment at the library. Defendant's argument misinterprets the proof scheme at the summary judgment stage. Although plaintiff must establish this element *at trial*, she need not do so here. *See Randle v. City of Aurora*, 69 F.3d 441, 452 n. 17 (10th Cir.1995) (at summary judgment stage case should go to the factfinder if plaintiff produces both a prima facie case and evidence supporting a finding of pretext).

that a reasonable factfinder could find the reasons unworthy of credence and infer that the employer did not act for those asserted legitimate, nondiscriminatory reasons. *Morgan v. Hilti, Inc.,* 108 F.3d 1319, 1323 (10th Cir.1997). Mere conjecture that the employer's explanation is a pretext for intentional discrimination, however, is not enough to overcome a motion for summary judgment. *Branson v. Price River Coal Co.,* 853 F.2d 768, 772 (10th Cir.1988).

### A. Refusal to Hire

■ To establish a prima facie case of age discrimination based on failure to hire, plaintiff must show (1) that she belongs to the protected class; (2) that she applied for and was qualified for a position with the library; (3) that despite her qualifications she was not hired; and (4) that the library filled the position with someone sufficiently younger to permit an inference of age discrimination or continued to seek applicants from individuals having qualifications similar to those of plaintiff. *See Lewis v. McDonnell Douglas Corp.,* 77 F.3d 492 (10th Cir.1996) (Table, available on Westlaw at 1996 WL 77038, *3) citing *Coe v. Yellow Freight Sys., Inc.,* 646 F.2d 444, 448–49 (10th Cir.1981).

■ The first and second elements of plaintiff's prima facie case are not in dispute: plaintiff is within the statutorily protected age group and the library did not hire her. Defendant contends that plaintiff fails to establish a prima facie case because she did not apply for a job after August 1988, and because no job was available in the technical services department.

■ "Employment discrimination law does not require that a plaintiff formally apply for the job in question." *Whalen v. Unit Rig. Inc.,* 974 F.2d 1248, 1251 (10th Cir.1992) *cert. denied* 507 U.S. 973, 113 S.Ct. 1417, 122 L.Ed.2d 787 (1993). It is sufficient that "the employer either be on specific notice that the plaintiff seeks employment or, where informal hiring procedures are used, that the plaintiff be in the group of people who might reasonably be interested in the particular job." *Id.*

In this case, defendant had specific notice that plaintiff sought employment with the library. Plaintiff worked at the library through Green Thumb, a primary goal of which is to find unsubsidized employment for older Americans. As a host agency, the library agreed to consider plaintiff for available positions. Plaintiff's Green Thumb supervisor approached the library director several times to inquire about placing plaintiff on the library's permanent staff. Moreover, the library agreed to hire plaintiff in March 1992, pending a successful training period. Plaintiff has therefore satisfied the requirement that she apply for a position with the library.

■ Plaintiff also establishes that she qualified for a technical services position and that despite her qualifications, the library hired a younger individual under circumstances which give rise to an inference of age discrimination. Plaintiff's performance review in 1993 stated that she was a "real asset" to the department and that the library planned to hire her in the summer of 1994. Despite this professed intent, the library not only refused to hire plaintiff, it instead funded part of the salary for a 29–year–old employee working in the same department under a different government program. The younger employee, who performed job duties similar to plaintiff's, had been with the library for only six months when the library began funding part of her salary in late 1993 or 1994. On this record, plaintiff has established a prima facie case of discriminatory refusal to hire.

■ Defendant asserts that it had legitimate non-discriminatory reasons for refusing to hire plaintiff: budget concerns which prevented it from placing plaintiff on its payroll before June 1994, and the fact that plaintiff rejected offers of employment in June and July of 1994. Plaintiff has identified evidence, however, that these reasons are pretextual. Despite its proffered budget concerns, defendant had funds to pay half of Rush's salary during this time period. Plaintiff may utilize this evidence to demonstrate pretext, see *Conner v. Schnuck Markets, Inc.,* 121 F.3d at 1397, and the Court finds that it creates a triable issue of fact regard-

ing whether defendant's proffered reason is worthy of belief. Likewise, the record contains disputed evidence whether plaintiff rejected offers of employment in June and July of 1994, and what effect—if any—these factors played in defendant's decision.

### B. Retaliation Claim

■ Plaintiff also claims that defendant retaliated against her for filing her first EEOC charge on August 26, 1994. To establish a prima facie case of retaliation, plaintiff must establish (1) that she engaged in protected opposition to discrimination; (2) that defendant undertook adverse action toward her contemporaneously or subsequent to her protected activity; and (3) a causal connection between the two. *See Sauers v. Salt Lake County*, 1 F.3d 1122, 1128 (10th Cir. 1993).[8]

Although plaintiff's EEOC charge satisfies the first element of her prima facie case, she fails to demonstrate adverse employment action within the meaning of the statute. With respect to this second element, plaintiff identifies five items which she contends constitute adverse action subsequent to her filing an EEOC charge: (1) McLaughlin's letter to the library board requesting permission to remove her and threatening to drop Green Thumb; (2) McLaughlin's instruction to document all incidents, or keep a "paper trail" about her; (3) the fact that McLaughlin refused to speak to her and ignored her; (4) the fact that other employees gave plaintiff the "cold shoulder" after McLaughlin informed them about her charge; and (5) the fact that someone placed an insensitive book in her desk drawer.

■ The Court finds as a matter of law that the first two items—McLaughlin's request for permission to remove plaintiff and terminate the Green Thumb program and his instruction to document all incidents, or keep a "paper trail" about plaintiff—do not constitute adverse action because the record reveals no evidence from which a jury could reasonably find that either request was ever executed. *See Cole v. Ruidoso Mun. Schs.*, 43 F.3d 1373, 1381 (10th Cir.1994). Accord-

ingly the Court considers only the remaining three items in analyzing plaintiff's retaliation claim.

■ In evaluating retaliation claims, courts have made it clear that " 'not everything that makes an employee unhappy is an actionable adverse action.' " *Jeffries v. Kansas Dep't of Social & Rehabilitation Servs.*, 946 F.Supp. 1556, 1567 (D.Kan.1996) (quoting *Smart v. Ball State Univ.*, 89 F.3d 437, 441 (7th Cir.1996)); *see also Craft v. Yellow Freight Sys., Inc.*, 139 F.3d 911, 1998 WL 72783 at *5 (10th Cir. Feb.23, 1998) citing *Mattern v. Eastman Kodak Co.*, 104 F.3d 702, 707 (5th Cir.), *cert. denied* —— U.S. ——, 118 S.Ct. 336, 139 L.Ed.2d 260 (1997) (statute designed to address ultimate employment decision, not every decision made by employers that arguably might have some tangential effect upon those ultimate decisions). Instead, an actionable adverse action is one that affects the " 'terms, privileges, duration, or conditions of employment.' " *Yerdon v. Henry*, 91 F.3d 370, 378 (2d Cir.1996) (quoting *Johnson v. Frank*, 828 F.Supp. 1143, 1153 (S.D.N.Y.1993)); *accord* 29 U.S.C. § 623 (making it unlawful to discriminate with respect to "compensation, terms, conditions, or privileges of employment" because of age).

By the same token, ADEA, being remedial in nature, should be liberally construed. *See Rutherford v. American Bank of Commerce*, 565 F.2d 1162, 1165 (10th Cir.1977). Affording a liberal construction to what constitutes "adverse employment action," the Tenth Circuit Court of Appeals has held that employer conduct which can have "an adverse impact on future employment opportunities" may be an adverse employment action. *Berry v. Stevinson Chevrolet*, 74 F.3d 980, 986 (10th Cir.1996) (prosecution for suspected criminal activity may constitute adverse employment because it can have adverse impact on future employment opportunities). Examples of actionable adverse action include disciplinary demotion, termination, unjustified evaluations and reports, loss of normal work assignments, and extension of a probationary

---

8. ADEA protects "employees or applicants for employment" from discrimination by an employ-er for engaging in activity protected by the statute. *See* 29 U.S.C. § 623(d).

period. *See Cooper v. Cobe Labs., Inc.,* 743 F.Supp. 1422, 1433 (D.Colo.1990); *Sauers v. Salt Lake County,* 1 F.3d 1122, 1128 (10th Cir.1993) (transfer or reassignment of duties); *Kenworthy v. Conoco, Inc.,* 979 F.2d 1462, 1471 (10th Cir.1992) (denial of promotion); *Rutherford v. American Bank of Commerce,* 565 F.2d at 1164 (negative reference by employer who had previously given positive reference); *but see Meredith v. Beech Aircraft Corp.,* 18 F.3d 890, 896 (10th Cir.1994) (evaluation which states that employee "meets expectations" does not constitute adverse action).

In this case plaintiff claims that after her EEOC charge, McLaughlin and her co-workers treated her in a hostile and abusive manner—so much so that she was forced to resign on January 28, 1995. An employee who is not formally discharged from employment may still be constructively discharged if the employer, by its illegal discriminatory acts, made working conditions so difficult that a reasonable person in plaintiff's position would feel compelled to resign. *Derr v. Gulf Oil Corp.,* 796 F.2d 340, 344 (10th Cir.1986); *Ulrich v. K–Mart Corp.,* 858 F.Supp. 1087, 1093 (D.Kan.1994) *aff'd* 70 F.3d 1282 (10th Cir.1995) (Table).

While the Court assumes for purposes of this order that constructive discharge may constitute an "ultimate employment decision" or "adverse employment action," plaintiff fails to establish a cognizable claim for constructive discharge because on these facts a reasonable jury could not conclude that defendant made working conditions so difficult that a reasonable person in plaintiff's position would feel compelled to resign. Plaintiff did not report directly to McLaughlin, and the record does not disclose any respect in which his refusal to speak to her caused any material alteration in the terms and conditions of her employment. The same may be said of the fact that unidentified co-workers gave her the "cold shoulder" and that someone placed the book in plaintiff's desk drawer. Because plaintiff does not demonstrate any legally cognizable "adverse action" she does not establish a prima facie case of retaliation. Defendant's motion for summary judgment on this claim is sustained.

Finally the Court observes that although a claim for hostile work environment based on age may be cognizable, see *O'Shea v. Yellow Tech. Servs., Inc.,* 979 F.Supp. 1390, 1396 (D.Kan.1997), plaintiff has never advanced such a claim in this case. The *Complaint* (Doc. # 1) filed April 23, 1997, advanced four theories of relief (refusal to hire, retaliation, fraud and infliction of emotional distress). In the agreed *Scheduling Order* (Doc. # 13) filed August 27, 1997, plaintiff confirmed that these were her theories of relief. The *Pretrial Order* (Doc. # 40) filed December 10, 1997, is inartfully worded but in context, the Court construes plaintiffs references to hostile work environment and constructive discharge to be claims for special damages arising from defendant's unlawful retaliation claim. In other words, in alleging constructive discharge, plaintiff is not advancing a separate theory of recovery but merely stating a claim for back pay as part of her retaliation claim. So construing plaintiff's claim, defendant's motion for summary judgment on this point is moot.

**IT IS THEREFORE ORDERED** that *Defendant's Motion For Summary Judgment* (Doc. # 41) filed December 15, 1997, should be and hereby is sustained as to plaintiff's claim for retaliation.

**IT IS FURTHER ORDERED** that the motion is overruled as to plaintiff's claim for refusal to hire.